John H. DAVIS and Cora Davis, Co-partners, t/a John H. Davis Company, Appellants,

v.

HUMPHREYS & HARDING, INC., a corporation, Appellee.

No. 3525.

District of Columbia Court of Appeals.

Argued Nov. 2, 1964.

Decided Dec. 2, 1964.

Leonard W. Burka, Washington, D. C., with whom J. E. Bindeman, Washington, D. C., was on the brief for appellants.

John L. Kilcullen, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

MYERS, Associate Judge:

Appellee, Humphreys & Harding, Inc., was awarded a contract for the construction of utility buildings to house the heating, air conditioning and other mechanical equipment serving the Dulles International Airport in Virginia. In turn, it awarded a subcontract to the appellant John H. Davis Company to perform the painting work. A dispute arose as to whether appellant was required under its contract to paint certain mechanical equipment.[1] When the matter could not be settled, appellee wired appellant that, pursuant to their agreement, appellant was given notice to properly man the job and complete all painting and that, in the event of its failure to comply, the work would be done by others and the cost therefor deducted from the amount of the subcontract. When appellant persisted in its position that its subcontract did not call for it to do the painting in dispute, appellee secured another company to complete the job and then withheld $4,210 from appellant's contract price, the amount paid to complete the painting. Appellant, alleging it had performed all services required, filed suit to recover this sum.[2]

1. Appellant submitted an estimate for an additional $6,650 to paint the work in dispute.

2. It was stipulated that, with the exception of $4,210 withheld by appellee, the entire contract price had been paid.

The trial court found that under the subcontract appellant was required to paint the mechanical equipment in question; that it had failed and refused to do so; that there was a breach of the contract and a failure to substantially perform. Damages were found to be $4,210, the amount paid to the other contractor for completion of the work, which was held to be properly deducted from the original subcontract.

Appellant claims that the above findings were erroneous. Upon oral argument here, the principal question was whether appellee had produced sufficient evidence to establish that appellant was required to paint the equipment in dispute and that the sum of $4,210 was justifiably backcharged.

It is the contention of appellant that the painting of the mechanical equipment was not a part of its contract and that, under the specifications the subcontractors installing this equipment were responsible for the painting in question. At trial appellant's witness testified it is the practice of the trade to have the equipment painted by the contractor who installs it. On the other hand, appellee's executive vice president testified it is customary to have one painter do all the painting required on the job and that, with the exception of certain items not here in dispute, the painting was the entire obligation of appellant as painting subcontractor.

■ Whether the parties intended by their contract to cover the painting in issue was a factual question to be resolved by the trial judge upon conflicting evidence. Backus v. Veterans Cooperative Housing Ass'n, D.C.Mun.App., 96 A.2d 513, 515 (1953). We have read and considered the pertinent and interrelated sections in the Articles of Agreement between appellant and appellee and the special provisions and specifications for the utilities buildings. As the court's findings, previously summarized, have support in the record and are not plainly wrong, we affirm the judgment of the trial court in favor of appellee. Gagnon v. Wright, D.C.App., 200 A.2d 196, 199 (1964); Bondy Fixture Company v. Fogel, D.C.App., 196 A.2d 922, 923 (1964).

One matter remains which requires comment. In answer to the complaint, appellee presented an affirmative defense alleging that appellant had not, prior to suit, complied with Paragraph Eighteenth of the Articles of Agreement which provided that in the event of any controversy arising between the general contractor and the subcontractor "the matter in dispute shall be referred to a board of arbitrators" whose majority decision shall be binding upon the parties. No further reference to the arbitration provision appears in the record. The opinion of the trial judge does not mention it and in the briefs and oral arguments here neither party called attention to the failure to submit the matter to arbitration.

■ In view of the mandatory language of the provision for arbitration, we are at a loss to understand why the dispute was not resolved without recourse to litigation. It would clearly appear that the mutual intent of the parties was to seek in good faith an amicable adjustment of any problem arising between them. There are many salutary effects to be derived from submitting a dispute of this nature to arbitration where it may be resolved expeditiously, without resort to the crowded trial courts, by arbitrators with knowledge of the customs and practices of the industry. We do not intimate that the trial court should always be deprived of jurisdiction by a prior agreement to arbitrate, but settlement of disputes of this character through machinery designed by the parties should be encouraged. Clifton D. Mayhew, Inc. v. Pate, D.C.App., 202 A.2d 786 (1964).

Affirmed.