Hope H. CARTER, et al., Appellants,

v.

The CATHEDRAL AVENUE
COOPERATIVE, INC.,
Appellee.

No. 88–177.

District of Columbia Court of Appeals.

Argued May 15, 1989.

Decided Aug. 31, 1989.

Rehearing and Rehearing En Banc
Denied Dec. 21, 1989.

Eric A. Von Salzen, with whom Jeanne M. Crouse, Washington, D.C., was on the brief, for appellants.

Carol S. Rabenhorst, with whom C. William Tayler, Washington, D.C., was on the brief, for appellee.

Before ROGERS, Chief Judge, and STEADMAN and SCHWELB, Associate Judges.

STEADMAN, Associate Judge:

This appeal involves a dispute over the applicability of an arbitration provision in a lease to a dispute regarding the timeliness of notice given under a rental adjustment clause.[1] We hold that the trial court erred in concluding that the disputed issue was not arbitrable. Accordingly, we reverse the trial court's judgment on the merits and remand for further proceedings consistent with this opinion.[2]

Hope Carter and John Hemphill, Jr. (the "Landlords") are parties to a 99–year ground lease for land located at 4101 Cathedral Avenue N.W. in the District with the Cathedral Avenue Cooperative, Inc. (the "Tenant"), which owns and operates a cooperative apartment building on that site. Article I, Section 4 of the lease [3] provides

---

1. This is not the first time this matter has been before us; an earlier appeal was dismissed as premature. *Carter v. Cathedral Avenue Cooperative, Inc.,* 532 A.2d 681 (D.C.1987).

2. This appeal comes before us from the entry of a final judgment pursuant to Landlords' Rule 54(b) motion. Super.Ct.Civ.R. 54(b) (providing standards whereby court may direct entry of a final judgment as to fewer than all claims or parties in a case, allowing for immediate appeal). Landlords' counterclaim is still pending before the trial court.

3. That section of the lease reads in full:
    *Provided written notice is given requesting adjustment of annual basic rental as hereinabove provided, said annual basic rental of Twenty-five Thousand Three Hundred Twenty Dollars ($25,320.00) shall be adjusted to the*

Wholesale (Primary Market) Price Index, for all items, as determined by the United States Department of Labor, Bureau of Labor Statistics, based on all items for the period 1947–49, or its successor or most nearly comparable successor at the time of the adjustment. Such adjustment to such Index shall be accomplished by multiplying the basic rent of Twenty-five Thousand Three Hundred Twenty Dollars ($25,320.00) by a fraction, the numerator of which shall be such Index as of November of the lease year for which the adjustment shall be made and the denominator of which shall be such Index as of November 1959. If the base period shall be changed, the new Index for November, 1959, shall be inserted as the denominator. *If such Index shall be discontinued with no successor or comparable successor, or if either party with reasonable*

for an adjustment of the ground rent upon the expiration of the first twenty-five years of the lease term, and every ten years thereafter. Notice must be given ninety days before the end of the current period by the party seeking a change in the ground rent. The instant dispute concerns the interplay between the ninety-day notice provision and language in the lease providing for notification where one of the parties seeks an alternative to the formula used for adjusting the rent. The Landlords, who gave timely notice of their general desire to increase the ground rent, did not within that ninety-day period likewise give notice of their view that the Producer Price Index[4] was no longer an appropriate measure upon which to base rent calculations. The substantive issue for decision, therefore, is the nature and timing of the notice the Landlords were obligated by the lease to give regarding their dissatisfaction with the Index.[5] Since we hold that this substantive issue is embraced by the arbitration clause of the lease, we intimate no view on the merits of the dispute, leaving its resolution to the arbitrator. *See Ballard & Assocs. Inc. v. Mangum*, 368 A.2d

548, 551 (D.C.1977) (whether parties have agreed to arbitrate disputes of a particular kind is question for judicial resolution).[6]

The Supreme Court has set forth the principle that arbitration clauses should be broadly construed. Thus, in *AT & T Technologies v. Communications Workers*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), the Court stated:

> [W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

*Id.* at 650, 106 S.Ct. at 1419 (quoting *United Steelworkers v. Warrior & Gulf*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). Our own decisions, in cases outside the labor context, have recognized this same principle. *See Poire v. Kaplan*, 491 A.2d 529, 534 n. 8 (D.C. 1985) (rejecting challenge to arbitration

---

grounds therefor shall notify the other that such Index is no longer applicable for the purpose of this lease, the parties shall attempt to agree upon a substitute formula, but in the event the parties are unable to agree upon a substitute formula, then the matter shall be referred to arbitration as herein provided. At least ninety (90) days prior to the expiration of the first twenty-five (25) years of the term of this lease and at least ninety (90) days prior to the expiration of each succeeding ten (10) year period of the term hereof, the Landlord or the Tenant may, upon written notice to the other, request that the basic annual rental then being payable hereunder be increased or decreased for the succeeding ten (10) year period of the term of this lease in accordance with the foregoing provisions. If no written request for adjustment of basic annual rent is made by either the Landlord or the Tenant within the period of aforesaid, the annual basic rental payable for the succeeding ten (10) year period shall be at the same rate as was payable hereunder immediately preceding the last day when such notice for adjustment of annual basic rental could have been given. The annual basic rental, if adjusted as aforesaid, shall be payable in equal monthly installments in advance on the first day of each month.

(Emphasis added.)

**4.** The rent adjustment mechanism specified in the lease uses the Wholesale Price Index ("WPI") "or its successor or most nearly comparable successor." Article I, Section 4. The parties agreed that the Producer Price Index ("PPI") was the successor to the WPI, which had been discontinued, although there may be some dispute, brought out in the context of the estoppel issue, see *infra* note 5, as to whether or not the extent of the agreement was that the PPI would be adopted on an interim basis only.

**5.** Tenant asserts the alternative argument that principles of promissory estoppel require enforcement of what tenants characterize as a binding agreement between the parties regarding use of the Producer Price Index. Applying a familiar principle of appellate practice, we hold that since this issue apparently was not presented to or specifically ruled on by the trial court, even upon remand, we do not reach it on this appeal. *See, e.g., D.D. v. M.T.*, 550 A.2d 37, 48 (D.C.1988); *Arnold v. United States*, 511 A.2d 399, 407 n. 12 (D.C.1986).

**6.** Both parties urge us to treat the issue of whether the dispute is arbitrable under the provisions of the lease as a pure question of law. Complying with that joint position, we employ here *de novo* review.

award in dispute arising out of joint venture agreement to purchase apartment and parking space; citing principle that ambiguity as to whether a matter is within arbitrator's authority "must be resolved in favor of arbitration"); *Sindler v. Batleman*, 416 A.2d 238, 243 (D.C.1980) (appeal from denial of motion to vacate arbitration award in dispute arising out of joint venture agreement to build and maintain apartment building; noting that "case law ... dictates that where there is an ambiguity as to whether a matter is within the scope of the arbitrator's authority, the question is to be resolved in favor of arbitration").

Applying this principle to the case at hand, we cannot say that the arbitration clause of the lease is "not susceptible of an interpretation that covers the asserted dispute." *AT & T, supra* at 650, 106 S.Ct. at 1419. We therefore must disagree with the trial court's view that the agreement was not ambiguous with respect to whether the question of timely notice of the applicability of the Index was arbitrable.[7] *Cf. Jessamy Fort & Ogletree v. Lenkin*, 551 A.2d 830 (1988) (trial court found lease unambiguous and granted summary judgment; on appeal court disagreed, finding lease language subject to more than one reasonable interpretation and thus summary judgment inappropriate).

The clause relating to arbitration, contained in Article XII, provides in full as follows:

> In case *any* dispute, disagreement, difference, or question shall arise at any time hereafter between the Landlord and the Tenant, or any person claiming under either of them, *in connection with or in relation to* the value of any property, ability or capacity of any property to produce net rentals, the amount of insurance coverage, the lawful use of the de-

mised premises or the Improvements *or any matter which is expressly referrable [sic] to arbitration under the terms hereof,* then such dispute, disagreement, difference or question shall be submitted to and determined by arbitration at the choice of either the Landlord or the Tenant.

(Emphasis added.)

The arbitration clause then must be read in conjunction with Article I, Section 4 of the lease, which provides that a dispute over the applicability of the Index is subject to arbitration. The section in relevant part reads as follows:

> If such Index shall be discontinued with no successor or comparable successor, or if either party with reasonable grounds therefor *shall notify the other* that such Index is no longer applicable for the purpose of this lease, the parties shall attempt to agree upon a substitute formula, but in the event the parties cannot agree then the matter shall be referred to arbitration as herein provided.

(Emphasis added.)

We think it is a reasonable interpretation of the lease to regard the question of when and how one party "shall notify the other that such Index is no longer applicable" as a "dispute ... in connection with or in relation to ... any matter which is expressly referrable [sic] to arbitration." Tenant conceded at oral argument that the reasonableness of the grounds asserted for challenging the Index would be arbitrable (the "with reasonable grounds therefor" clause). It is likewise a fair reading of the section to conclude that the presence or lack thereof of a "successor or comparable successor" would be subject to arbitration. It would be anomalous to construe the "shall notify" clause alone, which directly follows the clause conceded by Tenant to

---

**7.** The trial court, commencing with an interpretation of the ninety-day notice requirement contained in the fifth sentence of Article I, Section 4, essentially adopted the Tenant's argument that the timeliness of notification was not a matter "in connection with or in relation to" the inability to agree on a substitute formula but rather a "condition precedent" to reaching the issue of a substitute formula at all. The pitfall

of this approach, however, lies in beginning with a substantive issue and only then turning to that of arbitrability, rather than the reverse. The ultimate issue here is the dimension of the notification requirement in the fourth sentence; thus, in a dispute over arbitrability, we focus our analysis on its relation to the arbitration clause.

be subject to arbitration, to be the only provision in that sentence lying beyond the pale of arbitration.

To be sure, the arbitration clause in the instant case is less expansive than a clause providing for arbitration of "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder," *AT & T, supra,* 475 U.S. at 650, 106 S.Ct. at 1419; or providing that "any controversy or claim arising out of or resulting from this agreement or the breach thereof, shall be settled by arbitration," *Sindler v. Batleman, supra,* 416 A.2d at 239, in that the parties agreed that only certain delineated areas of controversy would be subject to arbitration. However, in specifying these areas, the agreement sweepingly brought within the ambit of arbitrable issues "any dispute, disagreement, difference or question" arising "in connection with or in relation to" the specified areas.[8]

In light of the foregoing analysis and the presumption of arbitrability,[9] we are constrained to hold that the instant dispute must be deemed embraced by the arbitration clause when that clause is read in conjunction with the lease provisions contained in Article I, Section 4.

*Reversed and remanded.*

---

**8.** In *AT & T, supra,* 475 U.S. at 650, 106 S.Ct. at 1419, the Supreme Court noted that the "presumption of arbitrability" is "particularly applicable" with respect to broad arbitration clauses. Although the clause in the instant case is not as inclusive in scope as that in *AT & T,* neither is it so narrow as to make inapplicable the presumption of arbitrability discussed in that case.

**9.** Whatever antagonism may have been associated with the ancient common-law attitude toward arbitration, this hostility has long since dissipated. *See Rodriguez De Quijas v. Shearson/American Express, Inc.,* — U.S. —, 109 S.Ct. 1917, 1920, 104 L.Ed.2d 526 (1989) (noting

that " 'the old judicial hostility to arbitration' . . . has been steadily eroded over the years" and remarking upon the Court's "current strong endorsement of the federal statutes favoring this method of resolving disputes"); *Brandon v. Hines,* 439 A.2d 496, 500–01 (D.C.1981) (discussing changes in judicial attitudes toward arbitration). Pro-arbitration notions are hardly of recent vintage. Twenty-five years ago, shortly after the execution of the lease before us, we were noting the "many salutary effects" of arbitration, and that settlement of disputes "through machinery designed by the parties should be encouraged." *Davis v. Humphreys & Harding, Inc.,* 205 A.2d 309, 310 (D.C.1964).