Ellen H. HAYNES, Appellant,

v.

Armin U. KUDER, et al., Appellees.

No. 90–816.

District of Columbia Court of Appeals.

Argued April 2, 1991.
Decided May 31, 1991.

Jay P. Holland, with whom Steven M. Pavsner was on the brief, Greenbelt, Md., for appellant.

Charles I. Hadden, with whom Kevin M. LaCroix was on the brief, Washington, D.C., for appellees.

Before TERRY, STEADMAN and FARRELL, Associate Judges.

FARRELL, Associate Judge:

■ Appellant, the plaintiff in an underlying action for malpractice against the attorney who represented her in certain divorce matters, appeals from an order of the trial court compelling arbitration pursuant to a provision of the parties' retainer agreement.[1] Appellant challenges the trial judge's determination that her dispute with the attorney came within the scope of the arbitration clause. She also contests the court's rejection, without an evidentiary hearing, of her claim that no valid agreement to arbitrate existed because the attorney had failed to disclose material facts concerning arbitration and hence had fraudulently induced her into executing the arbitration clause. We affirm.

## I.

In the summer of 1985, appellant Haynes retained a Maryland attorney to represent her in a marital dispute with her husband when both parties were Maryland residents. One year later, appellant separated from her husband and moved to the District of Columbia. In November 1986, acting upon the advice of her Maryland attorney, appellant consulted with appellee Kuder, who is licensed to practice law in the District of Columbia. The purpose of the consultation was to discuss whether Kuder would represent Haynes in her domestic dispute. On December 1, 1986, Kuder mailed two documents to Haynes at her home—an "engagement letter" which set forth the terms of an agreement for Haynes to retain the services of Kuder, and a cover letter. The cover letter described the engagement letter as "setting forth the terms which we discussed in our conference," and explained the initial steps Kuder proposed to take if Haynes decided to retain him. In particular Kuder noted that "our first step will be to communicate with your present counsel [in Maryland]" in order to review his file and knowledge of the case; Kuder understood that the attorney had "indicated a willingness to cooperate fully" in regard to Haynes's consulting Kuder. The engagement letter attached the firm's current fee schedule and explained in detail the basis on which fees would be calculated and billed. Of primary relevance here, the proposed agreement con-

1. To challenge the October 19, 1989 order compelling arbitration, appellant properly appeals from the June 21, 1990 order of the court confirming the eventual arbitration decision. *See* D.C.Code § 16–4317(a) (1989); *Poire v. Kaplan,* 491 A.2d 529 (D.C.1985) (appeal taken from order confirming arbitration award in order to challenge order compelling arbitration and staying litigation); *AFGE v. Koczak,* 439 A.2d 478 (D.C.1981) (order compelling arbitration not appealable).

tained the following provision for arbitration:

> Although we do not anticipate any dispute concerning payment of fees, it is our policy that in case any such disputes arise, they will be handled through the less formal and more expeditious process of arbitration, rather than court action. Accordingly, it is agreed between you and the firm that any claim by the firm for unpaid fees and expenses, and any defenses or counterclaims to such a claim, *whether based on a claim of inadequate representation or any other ground,* shall be resolved exclusively through arbitration in the District of Columbia under the then applicable rules of the American Arbitration Association. Judgment upon an award rendered by the Arbitrator(s) in any such proceeding maybe [sic] entered and enforced in any Court of competent jurisdiction. [Emphasis added.]

The letter requested Haynes's signature of acceptance "[i]f the foregoing terms correctly reflect our agreement and understanding." Haynes executed the agreement on December 22, 1986. Seven months later, Kuder filed an action for divorce on behalf of Haynes in Maryland. The Hayneses settled their dispute in September 1988, at which time Haynes owed Kuder almost $11,000 in attorney's fees.

On July 20, 1989, Haynes sued Kuder and his law firm for legal malpractice in Superior Court, demanding a jury trial. On August 7, 1989, under the terms of the engagement letter, Kuder demanded arbitration to obtain "[p]ayment of balance of legal fees and costs." Haynes resisted arbitration. On September 11, 1989, Kuder filed a motion to compel arbitration and stay Haynes's Superior Court malpractice action. In his supporting affidavit, Kuder stated that he had "fully discussed with Mrs. Haynes all of the terms of the engagement letter, including the arbitration provisions, prior to her execution of the engagement letter." Haynes filed a motion to stay the arbitration proceedings in which she challenged the validity of the retainer agreement by repeating allegations made in her complaint that Kuder had fraudulently induced her to hire him. She further attacked the existence of the arbitration clause as fraudulently procured by Kuder's misrepresentations, stating:

> [A]t no time before I was induced to sign the retainer agreement did Mr. Kuder call my attention to or explain the meaning or significance of the arbitration clause to me. I had never before been involved in an arbitration proceeding or in a civil lawsuit for damages, and had no idea that by signing the retainer agreement I was giving up my right to sue Mr. Kuder for his negligence, or to have a jury determine the merits of my claims. If he had done so, I would have insisted on deleting that clause from the retainer agreement.

She also argued that her malpractice claims were outside the scope of the arbitration clause because she had never meant to agree to arbitrate malpractice claims, and because agreements to arbitrate legal malpractice claims violate ethical standards for lawyers.

After a non-evidentiary hearing on these motions, the trial judge ruled in favor of Kuder, ordering that "the parties shall proceed to arbitrate the disputes in this action as provided in the retainer agreement between them dated December 1, 1986." [2] The judge found that a valid, enforceable agreement to arbitrate existed between the parties. On its face the retainer agreement disclosed to Haynes that the "process of arbitration" would be employed for "dispute[s] concerning payment of fees" and that this arbitration process was an alternative to "court action." The judge also found that the undisputed evidence showed that Haynes was not pressured by Kuder into agreeing to arbitration. [3] The scope of

---

**2.** Accordingly, the judge stayed the malpractice case pending arbitration, D.C.Code § 16–4302(d), and denied Haynes's motion to stay the arbitration proceedings, D.C.Code § 16–4302(b).

**3.** The judge found: "[T]he agreement was sent to her home to read and accept if she so chose. The clause is not couched in arcane legal jargon. No one denied her the opportunity to consult other counsel. (Indeed she had another

the arbitration agreement "clear[ly]" included Haynes's malpractice claim for damages because the gravamen of the claim was the inadequacy of Kuder's legal representation. These claims, the judge reasoned, were expressly included in the language "any defenses or counterclaims to such a claim [for unpaid fees], whether based on a claim of inadequate representation or any other ground." Finally, the judge determined that Kuder's inclusion of an arbitration clause to resolve malpractice claims in the retainer agreement neither violated standards of legal ethics nor improperly limited liability for malpractice.[4]

## II.

Appellant argues that her agreement to arbitrate, to the extent it was valid at all, was limited to arbitration of fee disputes, thus excluding arbitration of malpractice claims. *See Lawrence v. Walzer & Gabrielson*, 207 Cal.App.3d 1501, 1507–08, 256 Cal.Rptr. 6, 9–10 (1989). In rejecting this claim, the trial judge found, as noted, that the gravamen of Haynes's suit against Kuder was "inadequate representation" of her interests in the divorce action, and that "[s]uch claims are embraced within the arbitration clause of the retainer agreement."

■ The trial court must decide as a matter of law whether a particular dispute is arbitrable. *AFGE v. District of Columbia*, 563 A.2d 361, 362 (D.C.1989); *Poire v. Kaplan, supra* note 1, 491 A.2d at 532–33. To make this determination, the court must inquire merely whether the arbitration clause is "susceptible of an interpretation" that covers the dispute. *AFGE v. District of Columbia*, 563 A.2d at 363; *Carter v. Cathedral Ave. Coop., Inc.*, 566 A.2d 716, 717–18 (D.C.1989) (quoting *AT & T Technologies v. Communications Workers*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89

L.Ed.2d 648 (1986) and *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)). This court reviews that determination, like any question of law, de novo, D.C.Code § 17–305(a) (1989).

■ We hold that the arbitration clause in the retainer agreement is "susceptible of an interpretation" that would include Haynes's claim for damages against Kuder. The clause provides for arbitration of any disputes arising from attorney fee claims including "any defenses or counterclaims to such a claim, whether based on a claim of inadequate representation or any other ground." Haynes's claim filed in Superior Court involves the value of Kuder's services and includes allegations of "inadequate representation." The claim is for money damages consisting of fees paid to Kuder and money allegedly lost in the final divorce settlement because of Kuder's negligence. The arbitration clause is thus "susceptible of an interpretation" that would include Haynes's monetary damage claim regarding the value of Kuder's services rendered.

## III.

The more troublesome issue in the case, however, is presented by Haynes's contention that the affidavits of the parties raised material issues of fact requiring an evidentiary hearing on whether or not Kuder fully disclosed the ramifications of the arbitration process to her and, by failing to do so, misled her into approving the arbitration clause. In essence the claim is that Kuder fraudulently induced her into agreeing to arbitration by failing to disclose facts that he, an attorney at the threshold

---

lawyer at the time she retained Mr. Kuder and his firm.)."

4. After entry of the order compelling arbitration with the accompanying orders denying a stay of arbitration and *staying the court litigation*, Haynes submitted her malpractice claims to arbitration. The parties settled their dispute over attorney's fees. After a four-day hearing before the arbitrators, an award was issued dismissing

Haynes's malpractice claims. When Kuder moved for an order confirming the award, Haynes responded by moving to vacate the award. Since Haynes presented no colorable basis upon which to vacate the award under D.C.Code § 16–4311, the trial judge confirmed the award and judgment was entered in favor of Kuder on June 21, 1990. D.C.Code §§ 16–4310, 16–4311(d).

of an attorney-client relationship, had a particular duty to disclose fully.[5]

Except when the party opposing arbitration "denies the existence of the agreement to arbitrate," the District of Columbia Uniform Arbitration Act requires the court to order arbitration when an applicant shows the existence of a valid agreement to arbitrate that is resisted by the opposing party. D.C.Code § 16–4302(a). A claim of fraudulent inducement of the arbitration clause of a contract effectively "denies the existence of the agreement to arbitrate," and so is resolved by the court. *See Hercules & Co. v. Shama Restaurant Corp.*, 566 A.2d 31, 39 (D.C.1989).[6] When such a denial is asserted, the court "shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied." D.C.Code § 16–4302(a); *see* 9 U.S.C. § 4 (1988) (comparable provision in federal arbitration statute). Proceeding "summarily" means that the court initially determines whether material issues of fact are disputed and, if such factual disputes exist, then conducts an "expedited evidentiary hearing" to resolve the dispute. *Merrill Lynch Pierce Fenner & Smith v. Melamed*, 425 So.2d 127, 128–29 (Fla.Dist. Ct.App.1982), *review denied*, 433 So.2d 519 (Fla.1983); *see Interbras Cayman Co. v. Orient Victory Shipping Co.*, 663 F.2d 4, 6–7 (2d Cir.1981) (same procedure under federal arbitration statute). The resolution of disputed issues of fact "should not be determined on affidavits, but rather a full trial should be had." *El Hoss Eng'g & Transp. Co. v. American Indep. Oil Co.*, 289 F.2d 346, 351 (2d Cir.), *cert. denied*, 368 U.S. 837, 82 S.Ct. 51, 7 L.Ed.2d 38 (1961).[7] Thus, the procedure to resolve "deni[als] of the existence of the agreement to arbitrate" under the Arbitration Act mirrors the familiar summary judgment procedure. *See Almacenes Fernandez, S.A. v. Golodetz*, 148 F.2d 625, 628 (2d Cir.1945) (relying on summary judgment law to interpret procedure under 9 U.S.C. § 4).

In this case, the trial judge determined that it was unnecessary to resolve the issue disputed by the affidavits of whether Kuder had explained arbitration to Haynes in their oral discussions, because the written engagement agreement sufficiently informed her of the nature of arbitration and the limits it placed on her ability later to challenge his performance. Although in deciding this issue we touch on substantial ethical concerns,[8] and the written agreement was somewhat terse in explaining the rights Haynes would relinquish by agreeing to arbitration, we agree with the trial judge that the written disclo-

---

**5.** *See Pyne v. Jamaica Nutrition Holdings, Ltd.*, 497 A.2d 118, 131 (D.C.1985) ("Nondisclosure of material information may constitute fraud, ... especially where there is a duty to disclose" (citation omitted)); *Hollywood Credit Clothing Co. v. Gibson*, 188 A.2d 348, 349 (D.C.1963) (to avoid contract based on defense of fraudulent inducement consisting of material misrepresentations, claimant must prove that (1) misrepresentation or omission about essential term of contract was made to claimant; (2) misrepresentation or omission was material factor in inducing claimant to sign contract; and (3) claimant signed contract believing representation or omission was true).

**6.** In contrast, an attack based on fraud in the making of the entire contract may be resolved by the arbitrator. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967); *see generally Smith Wilson Co. v. Trading & Dev. Establishment*, 744 F.Supp. 14, 17–18 (D.D.C. 1990) (discussion of "fraud in the inducement" rule of *Prima Paint Corp.*). *See also Thompson v. Lee*, 589 A.2d 406 (D.C.1991).

**7.** We need not decide in this case whether a jury trial is available under the District of Columbia Uniform Arbitration Act on the issue of existence of an agreement to arbitrate. *See* 9 U.S.C. § 4 (1988); S.Rep.No. 536, 68th Cong., 1st Sess. 8 (1924) (in federal courts, party opposing court-ordered arbitration has Seventh Amendment right to jury trial on issue of existence of contract to arbitrate, which Congress expressly "safeguarded" by statute). Our conclusion, *infra*, that the trial judge correctly granted what amounts to summary judgment on the issue of fraudulent inducement moots the jury trial question.

**8.** See D.C.Bar Comm. on Legal Ethics Op. No. 190 (1988) (Opinion No. 190); D.C.Bar Comm. on Legal Ethics Op. No. 211, 118 Daily Wash.L. Rptr. 1681 (May 15, 1990).

sure was sufficient to negate the claim of fraudulent inducement as a matter of law.

 Agreements between an attorney and a client for services are governed by the standard of good faith and reasonableness. *Saul v. Blumenfeld*, 445 A.2d 613, 614–15 (D.C.1982). "[I]n applying such a standard to contracts which have been executed long after the attorney-client relationship has been established, courts will scrutinize the contracts closely and will assign the burden of proof of reasonableness to the attorney." *Id.* at 615.[9] On the other hand, this court has held "such considerations ... not applicable" to a contract "entered into approximately two weeks after [the client] conferred with [the attorney] and before litigation had commenced." *Id.* The present agreement, of course, is of the latter kind. Still, we do not suggest that arbitration agreements between attorney and client are enforced on the same basis as ordinary commercial contracts; the standard of good faith and reasonableness, as applied in *Saul v. Blumenfeld*, implies a heightened obligation of attorneys, consistent with the oath of their profession, to be fair and frank in specifying the terms of the attorney-client relationship.[10]

We take as our polestar the 1988 Legal Ethics Committee opinion (No. 190) referred to earlier, note 8, *supra*, which stated that when a retainer agreement contains an arbitration clause, "the attorney has the obligation to make a full disclosure to the client of all the ramifications of an agreement to arbitrate, including eliminating the right to sue in court and have a jury trial." Kuder's written retainer agreement stated that "any dispute concerning payment of fees" would be resolved through arbitration "rather than court action," and that this would include any defense or counter-claim to a claim for fees "whether based on a claim of inadequate representation or any other ground." Although the provision does not refer expressly to relinquishment of the right to a jury trial, we agree with the trial judge that the reference to the unavailability of court action adequately conveyed that information. We also reject the argument that the language reasonably informed Haynes only that claims of inadequate representation—malpractice—serving as a *set-off* to specific fee demands would be arbitrated, but not claims for independent damages. Furthermore, the agreement was sent to Haynes at a time when concededly she was still represented by her Maryland attorney and, as the trial judge found, free to reject or accept it after consultation. We hold, in these circumstances, that the agreement sufficiently apprised Haynes that she was relinquishing her right to sue in court—and hence receive a jury trial—on any claim she might have against Kuder for inadequate representation.[11] The trial judge, therefore, did not err in concluding that an evidentiary hearing was unnecessary to consider what

---

9. *See, e.g., Spilker v. Hankin*, 88 U.S.App.D.C. 206, 210, 188 F.2d 35, 39 (1951) (fee contracts between attorney and client not "enforced upon the same basis as ordinary commercial contracts," "[e]specially ... where ... a contract beneficial to the attorney is executed long after the attorney-client relationship has commenced, when the position of trust is well established, and the litigation involved is reaching its culmination").

10. *See* 445 A.2d at 615 ("Moreover, there is no basis upon which we can conclude that the trial court did not scrutinize the contract closely, and assign the burden of proof of reasonableness to [the attorney]").

11. In *Lawrence, supra*, on which appellant relies, the arbitration clause provided that, "In the event of a dispute between us regarding fees, costs or any other aspect of our attorney-client relationship, the dispute shall be resolved by binding arbitration," but the agreement contained no explanation of the possible consequences of arbitration, in particular that arbitration was in place of court action and hence the right to a jury trial.

In May of 1990, more than three years after the agreement made in this case, the District of Columbia Bar Legal Ethics Committee, in Opinion No. 211, *supra* note 8, reconsidered its earlier opinion (No. 190) and concluded that because "the complex nature of arbitration" cannot be "adequately disclosed to a lay client," arbitration agreements covering all disputes between attorney and client are unethical "unless the client is in fact counselled by another attorney." We have no occasion here to consider the soundness of this opinion.

oral explanation, if any, Kuder had made to Haynes about arbitration.

Accordingly, the order confirming the arbitration award (subsuming in turn the order compelling arbitration, see note 1, *supra*) is

*Affirmed.*

STEADMAN, Associate Judge, dissenting:

The parties here had a dispute over attorneys fees totaling approximately $11,000. Pursuant to a three-page agreement in letter form, the question of fees, to which the letter was almost entirely devoted, was subject to arbitration, and I do not understand this to be in dispute. The issue presented is whether this same agreement also subjects to arbitration a malpractice claim for $1,000,000 arising out of the same representation. I do not think that question should have been decided without the opportunity for an evidentiary hearing.

By my reading, even with a lawyer's eye, the relevant paragraph is unclear in answering the question at issue.[1] It is made more so by the context of the entire letter agreement, devoted, as already mentioned, almost entirely to matters of fees and billings. Moreover, the cover letter states that the proposed agreement sets forth the terms "which we discussed in our conference," and the agreement itself states that it "will confirm and constitute a memorandum of our understanding regarding our representation of you." In these circumstances, and especially given the special nature of attorney-client agreements recognized by the majority opinion,[2] I do not think any final determination as to the meaning and effectiveness of the claimed arbitration provision should have been arrived at[3] without a fuller understanding and exploration of the circumstances lead-

ing to the execution of the agreement than the record reveals here.

---

1. That being so, it cannot, it seems to me, serve on its face as full disclosure of all its ramifications. I am puzzled by the majority's seemingly paradoxical view that the language is sufficiently ambiguous to require the resort to a rule of construction for arbitration clauses and yet sufficiently clear to constitute, as a matter of law, adequate notice of its effect.

2. This relationship would cause me to doubt the applicability of the normal rule that an arbitration clause covers any dispute to which it is "susceptible of [such] an interpretation," even if the validity of the clause itself in its claimed coverage was not in doubt, as here.

3. I agree with the majority that this was a decision for the trial judge here, at least in the absence of a timely jury demand.