**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1726-17T4

BRIAN DELANEY,

      Plaintiff-Appellant,

v.

TRENT S. DICKEY and SILLS
CUMMIS & GROSS, PC,

      Defendants-Respondents.

_____

Argued January 30, 2019 – Decided August 23, 2019

Before Judges Alvarez, Nugent and Reisner.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000214-17.

Glenn A. Bergenfield argued the cause for appellant.

Richard H. Epstein argued the cause for respondent Trent S. Dickey, and for pro se respondent Sills Cummis & Gross, PC (Richard H. Epstein and Joshua N. Howley, of counsel and on the brief).

PER CURIAM

This is a legal malpractice action. Plaintiff, Brian Delaney, a former client of defendant Sills Cummis & Gross, PC (Sills), appeals from the order of dismissal entered after a judge upheld an arbitration clause in the parties' retainer agreement. The judge ruled that plaintiff must arbitrate not only his fee dispute with Sills, but also his legal malpractice claim against Sills.

Otherwise enforceable agreements between attorneys and clients are unenforceable if they violate ethical rules governing the attorney-client relationship. The arbitration clause here incorporated by reference thirty-three pages of arbitration rules. Sills did not give plaintiff the rules when they presented him with the retainer agreement to sign, offered no explanation of the terms of either the retainer agreement or the extrinsic document, and watched plaintiff sign the retainer agreement knowing he had not read and therefore had not assented to the terms of the arbitration rules, some of which were material to the arbitration clause and the client's decision to retain Sills. Given those narrow circumstances, we conclude the arbitration clause violates the Rules of Professional Conduct (RPCs) and is unenforceable.[1] Hence we reverse.

I.

---

[1] Plaintiff has not argued that any other provision of the retainer is unenforceable.

A-1726-17T4

Plaintiff, a sophisticated businessman familiar with both complex legal matters and legal documents, became embroiled in a business dispute with his limited liability company partners in 2014. Two lawsuits ensued. Ten months after commencement of the first lawsuit, apparently dissatisfied with his attorneys, plaintiff retained Sills to represent him. In September 2015, he signed the retainer agreement that is the subject of this appeal.

The retainer agreement is a three-page letter with an attachment entitled "Attachment 1 to Engagement Letter—Arbitration Provisions." Sills is referenced in the agreement as "we" or "the Firm." Plaintiff is referenced throughout the agreement as "you."[2] The first paragraph summarizes the nature of plaintiff's dispute with his business partners, including his belief "that the other members may have defrauded you and/or diverted assets or taken loans for themselves at the expense of the Company." The terms on the remainder of page one through the first complete paragraph on page three delineate the agreement's monetary terms, the parties' rights and obligations concerning the agreement's termination, and plaintiff's waiver of prospective conflicts of interest on

---

[2] The retainer agreement appears to be a form agreement used for corporate clients as it sometimes refers to plaintiff as the "Company."

unrelated matters.  The second paragraph on page three—and the last—is the arbitration clause.

The arbitration clause states:

> If you have any issues or problems concerning the Firm's services or fees, we encourage you to notify me immediately so that we can attempt to promptly address the situation.  Most issues or problems of this nature can be resolved quickly and amicably by the Firm and you.  However, in the event that we and you are unable to come to amicable resolution with respect to any dispute (including, without limitation, any dispute with respect to the Firm's legal services and/or payment by you of amounts to the Firm), we and you agree that such dispute will be submitted to and finally determined by Arbitration in accordance with the provisions set forth on attachment 1 to this retainer letter.  In such case, you would need to engage separate counsel to represent your interests and you would incur additional expense in connection with such arbitration.  The decision of the Arbitrator will be final and binding and neither the Firm nor you will have the right to appeal such decision, whether in a court or in another arbitration proceeding.  You understand that, by agreeing to arbitrate disputes as provided in this retainer letter, you are waiving any and all statutory and other rights that you may have to a trial by jury in connection with any such dispute, claim, or controversy.  Notwithstanding the provisions of this paragraph and Attachment 1, the Company [sic], will retain the Company's [sic] absolute right to proceed under the Fee Arbitration Rules set forth in New Jersey Court Rule 1:20A, which will take precedence.

The attachment's first paragraph states:

4

> Any disputes arising out of or relating to this engagement agreement or the Firm's engagement by you will be conducted pursuant to the JAMS/Endispute Arbitration Rules and Procedures (the "JAMS Rules") then in effect (see http://www.jamsadr.com), except that, notwithstanding those rules, the following provisions will apply to the arbitration . . . .

The additional "provisions" on the attachment contain several material terms. First, they mandate the arbitration be conducted by one impartial arbitrator who can be a judge, practicing attorney, or a person who is not an attorney, selected by mutual consent, or if the parties cannot agree, in accordance with the JAMS Rules. Next, they include a waiver by the parties of any claim for punitive damages and preclude the arbitrator from awarding punitive damages. They also provide, among other things, that the arbitration will be binding and non-appealable and the proceedings confidential. Last, they require the parties to share the arbitrator's fees and expenses, "except that the award rendered by the arbitrator may include the costs and expenses of arbitration, reasonable attorneys' fees and reasonable costs for expert and other witnesses."

Plaintiff signed the retainer agreement. Plaintiff intended that Dickey represent him. The retainer letter bears a handwritten signature that spells "Trent S. Dickey" followed by the parenthetical notation "(TADL)." Dickey

was not present when plaintiff signed the retainer. His partner, Thomas A. Della Croce, attended the meeting with plaintiff. In a certification, Della Croce explained what occurred:

> I attended the initial intake meeting with [plaintiff] on September 16, 2015. During that meeting, I presented [plaintiff] with a proposed engagement letter. I told [plaintiff] that he should take his time reviewing the contents of the engagement letter. I also told [plaintiff] that he should ask me any questions he had about the contents of the engagement letter.
>
> I observed [plaintiff] review the engagement letter. He then signed it in my presence without asking me any questions. . . .

For his part, plaintiff averred in a verified complaint that no one from Sills "went over the arbitration provision with [him]." He also averred that no one from Sills explained the nature of the costs associated with the arbitration, including that they could "easily exceed $20,000" and could be awarded against him. Nor did anyone from Sills point out that the arbitration fees and costs "greatly exceeded" filing fees for a Superior Court action, or that under the retainer agreement plaintiff could be held liable for Sills' costs and attorneys' fees, depending on how the arbitrator ruled. Plaintiff asserted that had he been "made aware of the inequities and costs associated with proceeding with arbitration, as well as the fact that he was constitutionally entitled to have a jury

6

decide issues related to malpractice, he would have never signed the initial retainer agreement in the form presented by [Sills]," if he signed it at all.

Plaintiff terminated Sills after Sills had represented him for ten months.[3] Plaintiff refused to pay Sills approximately $400,000, the balance of the fees Sills had charged. A month after plaintiff terminated Sills, Sills initiated arbitration with JAMS in accordance with the parties' retainer agreement. During the ensuing year, the parties delayed arbitration in an unsuccessful attempt to mediate their fee dispute and then engaged in discovery in anticipation of the fee arbitration with JAMS.

Before the JAMS arbitration hearing commenced, plaintiff filed a malpractice action against Sills and Dickey. Plaintiff was represented by a new attorney—not the attorney representing him in the fee dispute. Plaintiff alleged in the malpractice action that Sills and Dickey failed to conduct certain discovery, failed to obtain documents that would have purportedly demonstrated his business associates' mismanagement of the limited liability companies, and failed to engage forensic experts to value one of the limited liability companies and analyze the practices of the company's members. When Dickey pressed for

---

[3] One of the underlying lawsuits had apparently settled, though the parties to this appeal reference an appeal of the purported settlement.

arbitration and JAMS refused to stay the arbitration proceedings, plaintiff, through his new attorney, filed a verified complaint and order to show cause. Initially believing the arbitration clause included only the fee dispute, plaintiff sought, among other relief, a declaratory judgment that the retainer agreement's arbitration provision was unenforceable or, alternatively, a stay of the JAMS arbitration of the fee dispute pending resolution of the malpractice action.

The Chancery Division judge determined in an oral opinion that the fee agreement's arbitration clause was enforceable, it encompassed Sills' fee claim and plaintiff's malpractice claim, and both claims were subject to JAMS arbitration. The parties entered into consent orders dismissing the declaratory judgment and legal malpractice actions. This appeal followed.[4]

## II.

Plaintiff makes three arguments on appeal. Because his arguments require us to apply legal principles to undisputed facts, our review is de novo.

_____

[4] Generally, "[a]n order . . . consented to by the attorneys for each party . . . is not appealable." Janicky v. Point Bay Fuel, Inc., 410 N.J. Super. 203, 207 (App. Div. 2009) (alterations in original) (quoting Winberry v. Salisbury, 5 N.J. 240, 255 (1950). However, because the consent order was the result of a decision that in effect compelled arbitration, see R. 2:2-3(a)(3), and in the interest of judicial economy, we have decided to hear the appeal.

Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).[5]

Plaintiff first contends the retainer agreement and the arbitration clause violate multiple RPCs and are therefore unenforceable. Next, he asserts all retainer agreements are unethical if they contain a mandatory arbitration clause that includes a future malpractice action. Last, he contends the Federal Arbitration Act (FAA), 9 U.S.C.A. §§1-16, does not preempt regulation of the practice of law by the New Jersey Supreme Court.

A.

Plaintiff's last argument requires little discussion. Indisputably, the New Jersey Supreme Court has the exclusive responsibility to regulate the conduct of attorneys. N.J. Const. art. VI, § II, ¶ 3 ("The Supreme Court shall make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts. The Supreme Court shall have jurisdiction over the admission to the practice of law and the discipline of persons admitted."); State v. Rush, 46 N.J. 399, 411 (1966).

---

[5] Plaintiff's brief contains four point headings. The arguments under one point heading are not different from, but merely elaborate on, the other three.

The Court's exclusive authority "extends to every aspect of the attorney-client relationship, including agreements for fees." Cohen v. Radio-Elecs. Officers Union, Dist. 3, NMEBA, 146 N.J. 140, 155 (1996) (citing In re LiVolsi, 85 N.J. 576, 585 (1981)). "[A]n attorney's freedom to contract with a client is [thus] subject to the constraints of ethical considerations and [the Court's] supervision." Ibid. "An otherwise enforceable agreement between an attorney and client would be invalid if it runs afoul of ethical rules governing that relationship." Id. at 156.

Nothing in the FAA suggests otherwise. To the contrary, the FAA states expressly that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. §2 (emphasis added). The exception is broad enough to include a retainer agreement that runs afoul of ethical rules governing the attorney-client relationship.

The question before us is not, as plaintiff suggests, whether the FAA preempts the regulation of the practice of law by the New Jersey Supreme Court. Rather, the question is whether the Sills retainer agreement runs afoul of the ethical rules governing the attorney-client relationship such that the retainer agreement—or the arbitration clause—is invalid.

10

Thus, we turn next to plaintiff's first argument—that whether or not arbitration of legal malpractice claims are per se invalid, the Sills arbitration clause is nonetheless invalid because it violates RPC 1.4(c), 7.1(a), 1.7(a)(2), and 1.8(h)(1).

We first consider RPC 1.7(a)(2), which prohibits an attorney from representing a client if the representation will be "materially limited . . . by a personal interest of the lawyer." Plaintiff contends retainer agreements requiring arbitration of malpractice claims create an inherent conflict that violates RPC 1.7(a)(2). However, his brief presents no empirical evidence to support his factual contentions in support of the argument, and in the absence of a proper record, the argument does not merit further discussion. R. 2:11-3(e)(1)(E).

Plaintiff next contends that by including the arbitration clause in the retainer agreement, Sills violated RPC 1.4(c), 1.8(h)(1), and 7.1(a). RPC 1.4(c) requires a lawyer to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." RPC 7.1(a) prohibits a lawyer from making "false or misleading communications about the lawyer, the lawyer's services, or any matter in which the lawyer has or

seeks a professional involvement." The RPC states "[a] communication is false or misleading if it . . . contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading." Ibid. RPC 1.8(h)(1) prohibits a lawyer from making "an agreement prospectively limiting the lawyer's liability to a client for malpractice . . . unless permitted by law and the client is independently represented in making the agreement[.]"

Plaintiff emphasizes RPC 1.4(c)'s language that a lawyer "shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." He points out that Della Croce explained nothing. He insists Sills, through Della Croce, had the duty to explain what parts of the arbitration agreement benefitted Sills and what parts benefitted him.

According to plaintiff, Della Croce also violated RPC 7.1(a), because he neither attached nor explained the JAMS rules, which contained material terms of which plaintiff was unaware and to which plaintiff did not agree. Plaintiff cites as examples JAMS rules he interprets as permitting JAMS to reassign the matter to another office and to stop the arbitration if Sills decides not to pay its share of fees and expenses due the arbitrator. He notes that under the JAMS

rules, the rules of evidence are not followed and hearsay is allowed. He contends the JAMS rules permit the arbitrator to award legal fees to Sills.

Last, plaintiff accuses Sills of violating RPC 1.8(h)(1) by requiring him to waive punitive damages.

Sills responds that plaintiff raised none of these issues before the trial court. Sills notes the court rules mandate disclosure in an appellate brief of issues not raised before the trial court. R. 2:6-2(a)(1) ("It is mandatory that for every point, the appellant shall include in parentheses at the end of the point heading the place in the record where the opinion or ruling in question is located or if the issue was not raised below a statement indicating that the issue was not raised below."). Sills argues that we should disregard plaintiff's arguments about the RPCs due to his failure to comply with the court rules.

Alternatively, Sills argues that it violated neither RPC 1.4(c) nor RPC 7.1(a). Sills points out that RPC 1.4(c) requires only that an attorney explain a matter "to the extent reasonably necessary" to permit a client to make an informed decision about retaining the firm. Sills contends that if a retainer agreement is clear on its face, no explanation is reasonably necessary for the client to make an informed decision, and therefore no explanation is necessary. Sills insists the agreement in this case is clear and unambiguous on its face.

Addressing RPC 7.1(a), Sills argues it did not violate the RPC by incorporating by reference the JAMS rules. Specifically, Sills asserts that "nothing in the JAMS Rules allows for an award of attorney's fees to Sills." Sills contends the JAMS rules permit the arbitrator to award attorney's fees only if provided by the parties' agreement or applicable law. Sills insists that "neither the engagement letter nor applicable New Jersey law allows for fee shifting in this case, so [plaintiff's] argument is simply wrong."

Sills insists that it did not violate RPC 1.8(h)(1) because this RPC only prohibits a lawyer from limiting the client's right to sue for malpractice, not from limiting damages.

We begin by exercising our discretion to consider plaintiff's arguments concerning the RPCs even though he did not squarely raise them before the trial court. That happened because plaintiff's malpractice attorney mistakenly interpreted the arbitration clause as referring to a dispute over fees only, not to a dispute over Sills' performance. Moreover, though plaintiff did not submit the JAMS rules to the trial court, they are referenced in the retainer agreement and Sills does not dispute that they formed part of that agreement.

We next turn to RPC 1.4(c). As previously noted, this RPC requires a lawyer to "explain a matter to the extent reasonably necessary to permit the

14                                                                 A-1726-17T4

client to make informed decisions regarding the representation." Twelve years before the parties in this case signed the retainer agreement, we explained that "[t]he potential effect of an agreement to arbitrate must be clear to the client to be binding upon him." Kamaratos v. Palias, 360 N.J. Super. 76, 87 (App. Div. 2003) (citing Haynes v. Kuder, 591 A.2d 1286 (D.C. App. 1991)). We added, "[i]t is not sufficient, moreover, that the client have experience in business to permit a conclusion that the client made an informed decision to agree to proceed with arbitration in all instances." Ibid.

In addition, nearly six years before the parties in this case signed the retainer agreement, we explained: "Full and complete disclosure of all charges which may be imposed upon the client is also necessitated by RPC 1.4(c)." Alpert, Goldberg, Butlter, Norton & Weiss, P.C. v. Quinn, 410 N.J. Super. 510, 531 (App. Div. 2009). We asked, rhetorically, "[i]f the client does not know what charges and costs beyond the hourly rate he may be exposed to, how can the client be expected to make an informed decision regarding representation." Ibid. Consequently, we noted:

> Merely directing the client to ask for another document that is not directly presented and explained to the client but will bind him or her does not fulfill the lawyer's obligation pursuant to R.P.C. 1.4(c). This obligation to thoroughly explain all the terms of retention is

15

particularly appropriate, given that the lawyer has a unique and fiduciary relationship with the client.

[Ibid. Cf., F.G. v. MacDonell, 150 N.J. 550, 563-64 (1997)].

The extent of the required disclosures will depend upon the case. Certainly, clients must be informed they are "giving up [their] right[s] to bring [their] claims in court or have a jury resolve the dispute." Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 447 (2014). In addition, clients should be informed to some extent of the basis of the costs and charges they will incur by waiving their right to access the courts and agreeing to arbitration. Quinn, 410 N.J. Super. at 531.

Here, the retainer agreement included an explanation that by agreeing to arbitration the client was waiving his rights to seek relief in court. The attachment to the retainer agreement also informed the client he would be required to pay an equal share of all costs and expenses related to compensation of the arbitrator, the site and any administrative fees. These statements, however, provided the client with no information by which he could make any reasonable estimate of what the arbitration's cost would be. The JAMS rules, on the other hand, specify the administrative fee and provide a toll-free number a client can call for information about "individual neutrals' rates." But Sills did

16

not include the rules with the retainer agreement. Consequently, the client had no way of gauging whether the arbitrator's fee would be closer to $10,000, $50,000 or $100,000.

Of equal concern, some of the JAMS rules implicate substantive, rather than merely procedural issues. For example, Rule 17(b) states that "[e]ach party may take one deposition of an opposing Party or of one individual under the control of the opposing Party." Thereafter, "[t]he necessity of additional depositions shall be determined by the Arbitrator based upon the reasonable need for the requested information, the availability of other discovery options and the burdensomeness of the request on the opposing Parties and the witnesses." That rule and the arbitrator's decision could affect the ability of a party to develop proofs in a complex case and could affect discovery and trial strategy. Additionally, because the arbitration clause did not specifically refer to "malpractice" or "professional negligence," a client reviewing the JAMS rules might not appreciate the significance of the rules' limitations on discovery.

We are not suggesting an attorney must explain the JAMS rules to a prospective client. But the thirty-three pages of JAMS rules should at least be presented to clients with the retainer agreement. The mere number of rules, as well as their complexity to a lay person, could cause the potential client to ask

questions about the rules or seek advice elsewhere before signing a retainer agreement.

We also note with interest the parties' dispute about whether the JAMS rules are against public policy because they permit fee shifting, that is, the award of attorneys' fees to the prevailing party. Plaintiff says they do. Sills says they do not. Sills points out that JAMS Rule 24(g) permits an arbitrator to allocate attorneys' fees only if provided by the parties' agreement or applicable law. Sills insists that "neither the engagement letter nor applicable New Jersey law allows for fee shifting in this case, so [plaintiff's] argument is simply wrong." Sills' position appears to be inconsistent with the provision in its engagement letter's attachment:

> The Firm and You will pay an equal share of all costs and expenses related to compensation of the arbitrator, the site and any administrative fees, except that the award rendered by the arbitrator may include the costs and expenses of arbitration, reasonable attorneys' fees and reasonable costs for expert and other witnesses.
> [(Emphasis added).]

It is difficult to reconcile Sills' argument with the emphasized language in the retainer agreement's attachment, a fact that perhaps suggests the retainer agreement is not as clear in some respects, as the trial court determined.

As previously noted, the Supreme Court has held that "[a]n otherwise enforceable agreement between an attorney and client would be invalid if it runs afoul of ethical rules governing that relationship." Cohen, 146 N.J. at 156. We conclude that because Sills gave plaintiff no explanation about the retainer agreement's or arbitration provision's terms, did not provide plaintiff with the JAMS rules, provided no explanation about the JAMS rules, and watched plaintiff sign the agreement knowing he had not assented to the JAMS rules, this otherwise enforceable agreement runs afoul of two of the ethical rules governing the attorney-client relationship. Accordingly, we find the agreement invalid.

Although not determinative, we also find the agreement violates RPC 1.8(h)(1), which prohibits an attorney from making an agreement with a client that prospectively limits the attorney's liability to the client for malpractice. If accepted, Sills' argument—that an attorney cannot prospectively prevent a client from filing a malpractice action, but can limit the amount of damages the client can recover in such an action—would permit an attorney to restrict a client's recovery in a lawsuit to nominal damages. Moreover, we find some merit in plaintiff's claim that Sills' mutual waiver of its right to recover punitive damages from a client is largely illusory. Nonetheless, plaintiff's legal malpractice

complaint did not include a claim for punitive damages. We thus repeat that this RPC violation is not dispositive of whether the arbitration clause is valid.

In light of our holding, we need not address plaintiff's broader argument, that the RPCs prohibit all agreements to arbitrate malpractice claims.

## III.

Our holding is narrow. We do not hold that all retainer agreement clauses that mandate arbitration of legal malpractice claims are per se invalid. Nor do we hold that the "reasonable explanation" required of an attorney by RPC 1.4(c) cannot be contained in the written retainer agreement. Rather, we hold that when an attorney incorporates by reference in a retainer agreement a document that contains material terms concerning mandatory arbitration of legal malpractice claims, does not provide the incorporated document to the client, gives the client no explanation about material terms contained in the document, and asks the client to sign the retainer agreement without reading the incorporated documents, the agreement runs afoul of the RPCs and is invalid. We have considered the parties' remaining arguments and found them to be without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

We thus vacate the trial court's order upholding the arbitration clause and remand the matter for further proceedings consistent with this opinion.

A-1726-17T4

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1726-17T4