**In the Matter of the ARBITRATION BETWEEN READING & BATES CORPORATION and Reading & Bates Drilling Co., Petitioners, against ALL AMERICAN MARINE SLIP, a division of Marine Office of America Corporation, Respondent.**

**No. 95 Civ. 2109 (HB).**

United States District Court, S.D. New York.

June 27, 1996.

Donald J. Kennedy, Haight, Gardner, Poor & Havens, New York City, for Petitioners.

John A.V. Nicoletti, Donovan Parry Walsh & Repetto, New York City, for Respondents.

### Order and Opinion

BAER, District Judge.[1]

Petitioner, Reading & Bates Corp. and Reading & Bates Drilling Co. ("R & B"), moves to compel arbitration of a damage claim on a vessel insured under a "Package Policy"[2] underwritten by Respondent, All American Marine Slip ("AAMS"). A previous claim under the same Package Policy has been arbitrated, confirmed and paid. Petitioner asserts that the new claim either falls under the "Loss of Hire" section which contains an arbitration agreement or under the "Hull Damage" section which does not contain an arbitration provision, but which petitioner, nevertheless, argues should require arbitration. Respondent contends that this claim falls within the Hull Damage section of the policy which does not contain an arbitration provision and therefore the claim is not arbitrable.

Upon review of the briefs and having heard oral argument, I find that the claim asserted is a claim for damage to the ship and therefore falls under the Hull Damage section of the Package Policy. Since that section contains neither an arbitration clause nor does it incorporate such a clause from any other section, the petition to compel must be denied.

### Background

Petitioner, Reading & Bates Corp. and Reading & Bates Drilling Co. ("R & B"), brings this motion pursuant to 9 U.S.C. §§ 4 and 5 to compel Respondent, All American Marine Slip ("AAMS"), to proceed to arbitration. The claim centers around which section of a "Package" insurance policy covers damage caused by Hurricane Andrew to the fairleader stops[3] on the "Jack Bates", a mobile offshore drilling unit. Petitioners assert that the claim should be made under the "Loss of Hire" section. That section covers "loss due to the Drilling Unit(s) ... being wholly or partly deprived of her/their earning capacity ... resulting from the termination, cancellation and/or delay of the Assured's Drilling Contract(s). . . ." It contains a broad arbitration clause which states in relevant part that:

---

1. Jason Sanders, a second year law student at The University of Michigan School of Law, aided in the research of this opinion.

2. An insurance policy which is made up of smaller separate policies which cover specific areas of loss.

3. Strips of planks which prevent a ship's rigging from chaffing.

If and whenever any dispute, difference or question arises between the Assured and the Underwriters hereon with reference to the construction, validity or performance of the Policy or any other matter arising out of or in any way connected with this Policy ... it shall be a condition precedent to any right of action hereunder that such dispute be referred [to a panel of arbitrators].

*See* Kennedy Aff.Ex. J at 104. Respondents argue that the damage claim more appropriately should be placed under the "Hull and Machinery" section of the Package Policy, which does not contain an arbitration clause. The Hull Damage section covers "All Risks of Physical Loss or Damage to vessels, drilling units, rigs, platform rigs and tenders, etc." and states in relevant part that:

THIS SECTION REPRESENTS AN INDEPENDENT COVERAGE PART OF THE POLICY AND SHALL ONLY BE SUBJECT TO THE TERMS AND CONDITIONS OF OTHER SECTIONS WHERE SPECIFICALLY SO STATED.

*See* Nicoletti Aff.Ex. 1 at 43. The Package Policy also contains a section of "General Conditions" which applies to the entire policy. The "General Conditions" state that the different sections "are deemed to be independent coverage interests...." *See* Nicoletti Aff.Ex. 2 at 33, and furthermore, that "[w]herever the word 'policy' appears herein it shall be deemed to read 'section' and/or 'sub-section' as applicable." *See* Nicoletti Aff.Ex. 2 at 33.

When the Jack Bates was damaged by Hurricane Andrew on August 26, 1992, claims were made under both the Loss of Hire and the Hull Damage sections. The physical damage claim made under the Hull Damage section, was accepted and paid. The loss of hire claim was disputed due to ambiguous language in the policy's coverage. Pursuant to the Loss of Hire section agreement, the dispute was sent to an arbitration panel. That panel awarded R & B $3,100,000, plus interest. The award was confirmed by a judgement for $3,223,116.97 which AAMS paid. The interest awarded by the

arbitration panel added $135,907.40 to the previous total, which changed the sum from $107,950 below the policy limit to a sum in excess of policy limits.[4]

Petitioner later asserted an additional claim for damage to the fairleader stops on the vessel, arising out of the same storm. Petitioner claimed $107,950 of damage, the difference between the Package Policy's aggregate limit, and the arbitration award given (not including the interest). Respondent denied the claim asserting that full policy limits were reached by the prior arbitration award, and that even if they were not, this is a new claim where arbitration is not appropriate. Petitioner asserted that when pre-award and post-award interest is deducted from the award, the policy limits were not reached. Petitioner sought arbitration of the dispute, but Respondent refused. Judge Keenan, who had confirmed the award of the original panel, denied Petitioner's request to revive the previous arbitration panel to hear this dispute. Judge Keenan instructed the petitioner that the original litigation had been fully resolved and the proper course was to file a new action. *See* Nicoletti Aff. Ex. 6 at 2. Petitioner subsequently filed this action requesting that the court order AAMS to arbitrate this matter.

**Discussion**

■ In determining whether a claim is arbitrable the court must make a two step inquiry; whether the agreement in question contains an arbitration clause, and if so, whether the scope of the agreement encompasses the asserted claims. *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.,* 923 F.2d 245 (2nd Cir.1991) (citations omitted). To answer the first inquiry in this case the petitioner charts two possible courses. The first is that this claim falls within the Loss of Hire section which has an explicit arbitration agreement. The second is that assuming this claim falls under the Hull Damage section, the arbitration clause is broad enough to encompass this claim.

---

4. Respondent asserts that although the payment exceeded primary policy limits, it was paid without prejudice and without admitting that interest

on the judgement was to be paid regardless of policy limits. (Nicoletti Aff. at 5)

■ The court must first decide whether the claim is properly under the Loss of Hire section or the Hull Damage section. R & B claims that what it refers to as "additional hull damage" (Kennedy Aff.Ex. G at 2) falls under the "mobilization, towage, reoutfitting or similar expenses necessary to recontract the drilling unit" clause of the Loss of Hire section. (Kennedy Aff.Ex. J at 98) R & B does not specify the language in that clause on which it relies. Since this was a repair and not 'mobilization or towage' let us look at whether this claim may be considered 'reoutfitting'.

■ To 'outfit' as defined by Webster's Third New International Dictionary is "the act or process of fitting out or equipping (as for a voyage or expedition)." There is no mention of 'repair' or 'damage'. To include repairs to the ship from storm damage under the Loss of Hire section would make the Hull Damage section superfluous and that is contrary to the logical meaning and structure of the policy as a whole. Although ambiguous language in insurance policies is to be interpreted in favor of the insured, *American Home Products Corp. v. Liberty Mut. Ins. Co.*, 565 F.Supp. 1485, 1492 (S.D.N.Y.1983), *modified, aff'd.*, 748 F.2d 760 (2nd Cir.1984), when the contract's language admits of only one reasonable interpretation, the court need not look to rules of construction to ascertain the contract's meaning. *American Home*, 748 F.2d 760, 765.

The reasonable interpretation of the policy language, is that the "outfitting" clause is to apply to a change of specifications if the rig is forced to adopt a different type of hire requiring different equipment. The damage caused by Hurricane Andrew did not require a "reoutfitting" of the rig, merely a "repair" of the old equipment. Accordingly, this claim must fall under the Hull Damage section of the Package Policy.

■ The inquiry now turns to whether an arbitration clause can be read into the Hull Damage section. As a general rule, Federal law favors arbitration as an alternative dispute resolution process. *Progressive Cas. v. C.A. Reaseguradora Nacional*, 991 F.2d 42 (2nd Cir.1993) (citations omitted). Although Petitioner argues that any doubt as to the arbitrability of an issue has to be resolved in favor of arbitration, this argument is not applicable when determining whether the parties agreed to arbitration in the first place. It is after the determination that a contract contains an arbitration clause that there is a presumption of arbitrability of a disputed issue. *Assoc. Brick Mason Contractors v. Harrington*, 820 F.2d 31 (2nd Cir.1987). While arbitration may be favored by Federal law, it "is a matter of consent, not coercion". *Mastrobuono v. Shearson Lehman Hutton, Inc.*, —— U.S. ——, ——, 115 S.Ct. 1212, 1216, 131 L.Ed.2d 76 (1995) *quoting Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 1256, 103 L.Ed.2d 488 (1989). Arbitration is "simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, —— U.S. ——, ——, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995).

■ When deciding whether the parties agreed to arbitrate a certain matter courts generally should apply ordinary state-law principles that govern the formation of contracts. *First Options*, —— U.S. at ——, 115 S.Ct. at 1924. The Supreme Court explained that only *generally applicable* state contract law principles could be used to make that determination. *Perry v. Thomas*, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96 L.Ed.2d 426 (1986). The Supreme Court interpreted the preemptive effect of The Federal Arbitration Act stating:

state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state law principal which takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with [The Arbitration Act].

*Perry*, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 2527 n. 9. In *Progressive* the Court applied this principal to New York law and declared that "in determining whether the parties have agreed to arbitrate, we apply the ordinary preponderance of the evidence stan-

dard." *Progressive,* 991 F.2d 42, 46. To determine whether the parties intended the Hull Damage section to be subject to arbitration, we must look to the policy's structure.

An examination of the policy reveals that each individual section is intended to operate independently from each other. The general conditions of the Package Policy states that the different sections "are deemed to be independent coverage interests...." *See* Nicoletti Aff.Ex. 2 at 33. This notion is reenforced by the Hull Damage section itself which states that it is to be considered an independent coverage part of the policy. *See* policy language *supra* p. 3. Clearly the Hull Damage section of the policy was intended to operate separately from the other sections of the Package Policy and it cannot be said to contain an arbitration agreement merely because it is part of a Package Policy which contains one.

The only remaining inquiry then is whether the language from the Loss of Hire section, including its arbitration clause, was intended to be incorporated into the Hull Damage section.

The "General Conditions" of the Package Policy states that "[w]herever the word 'policy' appears herein it shall be deemed to read 'section' and/or 'sub-section' as applicable." *See* Nicoletti Aff.Ex. 2 at 33. Therefore, while the Loss of Hire section does contain a very broad arbitration agreement covering "any ... matter arising out of or in any way connected with this Policy ...," (*See* policy language *supra* p. 2–3) the policy as a whole makes it clear that it is meant only to apply to the Loss of Hire section. Furthermore, the Hull Damage section clearly states it is "ONLY ... SUBJECT TO THE TERMS AND CONDITIONS OF OTHER SECTIONS WHERE SPECIFICALLY SO STATED". *See* Nicoletti Aff.Ex. 1 at 43. Both the language of the "General Conditions" and the Hull Damage section of the Package Policy preclude the court from reading the arbitration language into the Hull Damage section of the Package Policy.

In interpreting the Package Policy as a whole and the Hull Damage section in particular I conclude that Petitioner has failed to carry its burden of proof by the requisite preponderance of the credible evidence. The Hull Damage section, neither contains an arbitration clause, nor does it specifically incorporate an arbitration clause from another section of the Policy. Arbitration is stayed and the parties will attend a pretrial conference on Thursday July 11 at 4:30 p.m.

### Conclusion

For the reasons stated above, the petition to compel arbitration is denied.

So Ordered.