**Laura MASUROVSKY, et al., Appellants,**

v.

**David GREEN, Appellee.**

**No. 95–CV–1317.**

District of Columbia Court of Appeals.

Argued Nov. 7, 1996.
Decided Dec. 30, 1996.
As Amended March 4, 1997.

Nancy F. Lesser, with whom Erik S. Jaffe and Megan E. Hills, Washington, DC, were on the brief, for appellant Masurovsky.

Pamela A. Bresnahan, with whom Steven R. Becker, Washington, DC, was on the brief, for appellant Zweben.

Jonathan Halperin, with whom Patrick M. Regan and Marc Fiedler, Washington, DC, were on the brief, for appellee.

Before TERRY, STEADMAN and KING, Associate Judges.

STEADMAN, Associate Judge:

This case requires us to examine the intersection of contract interpretation and what is generally termed the "presumption in favor of arbitration." We hold that the presumption in favor of arbitration is applicable to issues regarding the interpretation or construction of an agreement containing an arbitration clause, but not to issues of the existence of an agreement to arbitrate, or of whether the court or arbitrator determines the existence of such an agreement. We further hold that the trial court erred in determining that an agreement was completely integrated, and thereby superseded a prior agreement to arbitrate, on the basis of the document alone. We vacate the trial court's order denying appellants' motion to compel arbitration, and remand for further proceedings.

## I.

This case arose from the legal representation of Dr. David Green by Marc Zweben and Laura Masurovsky. Dr. Green first retained Zweben in November or December 1993 in connection with a pending lawsuit against C & P Telephone Company and its successor Bell Atlantic over telephone directory services. On December 21, 1993, Zweben sent Dr. Green a one page, three paragraph letter that became their first representation agreement. The text of the letter read:

> This letter will confirm our agreement that I will represent you in the above referenced matter. You will be billed for services and expenses on a monthly basis, with services to be charged at an hourly rate of $150, against a retainer of $5,000.
>
> Any disputes arising out of this representation will be resolved in accordance with the rules of the American Arbitration Association.
>
> If this is consistent with your understanding, please countersign on both originals of this letter, return one fully executed copy to me, and retain one for your records.

Dr. Green executed the letter on December 27, 1993.

In September 1994, Zweben suggested that Dr. Green retain Masurovsky to assist Zweben with the Bell Atlantic case. On September 29, 1994, Zweben sent Dr. Green another letter that became their second representation agreement. The text of that letter read:

> This letter sets forth the agreement under which Marc S. Zweben, P.C. will continue to represent you in the referenced case, in the light of the Court's favorable decision on Bell Atlantic's Motion in Limine, and Laura Masurovsky's involvement in the case.
>
> As we have discussed, Laura will enter an appearance in the case, and we will work together as co-counsel. I will continue to bill at $150 per hour for my time, and will bill for Laura's time at the same rate. In order to keep your costs to a minimu [sic] will use a paralegal, at $50 per hour. In addition, we will use your office staff, as much as possible, to prepare information and documents.
>
> I will incorporate Laura's bill into mine, so that you will receive a single invoice. I will continue to bill monthly, for expenses as well as hourly fees, and payment will be due ten days from the date of the invoice.
>
> If you find this agreement acceptable, please sign below, and fax a copy back to me.

Dr. Green executed the letter that same day.

In January 1995, Dr. Green settled his case against Bell Atlantic upon the advice of Zweben and Masurovsky. Dissatisfied with the settlement, Dr. Green filed a legal malpractice suit against Zweben and Masurovsky on June 2, 1995. On July 21, 1995, Zweben and Masurovsky moved pursuant to D.C.Code § 16–4302 (1989) to compel arbitration under the first representation agreement. Dr. Green opposed the motion, and Zweben and Masurovsky filed replies. In an order docketed September 13, 1995, the trial court concluded that no hearing was necessary, and denied the motion to compel arbitration.

The trial court gave two reasons for denying the motion. First, the trial court held that the arbitration clause in the first agreement was "insufficient to establish an arbitration requirement" because it was "vague and unclear on its face" and "does not say there is an agreement to arbitrate and says nothing regarding the loss of judicial rights or remedies." The trial court held in the alternative that there was no agreement to arbitrate because the second agreement, which did not contain an arbitration clause, governed the dispute. Zweben and Masurovsky timely filed this appeal.[1]

## II.

Appellants first contend that the trial court erred in finding the arbitration clause of the first agreement vague and unenforceable because it improperly failed to apply the presumption in favor of arbitration. We agree.

 "A motion to compel arbitration invokes the well-established preference for arbitration when the parties have expressed a willingness to arbitrate." *Friend v. Friend,* 609 A.2d 1137, 1139 (D.C.1992). Variously called a presumption, preference or policy, the rule favoring arbitration is identical under the D.C. Uniform Arbitration Act, D.C.Code §§ 16–4301 to 16–4319 (1989), and the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (1996). *Id.* Succinctly put, the rule is that

> [w]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

---

1. We have jurisdiction over the appeal of this interlocutory order under D.C.Code § 11–721(a)(2)(A) (1995) because the trial court's denial of the motion to compel arbitration "frustrate[d] arbitration." *Brandon v. Hines,* 439 A.2d 496, 506–07 (D.C.1981); *Umana v. Swidler & Berlin, Chartered,* 669 A.2d 717, 721 & n. 11

(D.C.1995). We need not reach the issue reserved in *Umana* concerning the validity under the Home Rule Act of the apparent jurisdictional grant over such appeals contained in D.C.Code § 16–4317 (1989). *See Umana, supra,* 669 A.2d at 722; *id.* at 724 (Terry, J., concurring).

*Carter v. Cathedral Ave. Coop., Inc.*, 566 A.2d 716, 717 (D.C.1989) (quoting *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986)). Thus, we have said that a trial court must determine if a particular arbitration clause is "susceptible of an interpretation" that arbitration is required for a particular dispute. *Haynes v. Kuder*, 591 A.2d 1286, 1289 (D.C.1991). If the clause is susceptible to such an interpretation, then the trial court must order arbitration. *Hercules & Co. v. Beltway Carpet Serv., Inc.*, 592 A.2d 1069, 1072 (D.C.1991). We review such a determination *de novo*. *Haynes, supra*, 591 A.2d at 1289.

■ Here, the trial court denied the motion to compel arbitration in part because it found the arbitration clause of the first agreement "vague and unclear on its face," and hence "insufficient to establish an arbitration requirement." The arbitration clause provided that "[a]ny disputes arising out of this representation will be resolved in accordance with the rules of the American Arbitration Association." We agree with appellants that the clause is not vague in the sense that it has no meaning. Indeed, we cannot readily think of any meaning other than that arbitration is required for disputes arising from the attorney-client relationship. Although the clause in its application may not be a model of clarity, and may possess a certain amount of ambiguity, that is precisely the circumstance in which the presumption becomes operative. By failing to apply the presumption in favor of arbitration and to construe any ambiguity in favor of arbitration, the trial court erred in its conclusion that the language was insufficient to require arbitration of this dispute.[2]

However, the trial court had a distinct alternative ground upon which it based its denial of the motion to arbitrate. We turn to that issue.

2. The parties presented completely contrary affidavits as to whether Green and Zweben had an oral conversation about the effect of the arbitration clause on Green's right to judicial relief. *See Haynes, supra*, 591 A.2d at 1289–91. The trial court did not have occasion to resolve this factual dispute, nor address the assertion made here by appellants that any such requirement is barred by federal case law prohibiting the sin-

### III.

The trial court alternatively ruled that, in any event, the second agreement was the sole source of the parties' respective rights and obligations. The court reached that conclusion "based on the language of [the second] agreement." It noted that nothing in the second agreement referred to the first agreement and that there was nothing in the letter to lead anyone to conclude that it did not constitute a new relationship between the parties. Although the trial court did not specify what legal theory it relied upon in reaching this conclusion, we assume that it meant that the second agreement was a completely integrated agreement, rendering the first agreement inoperative.

■ When parties to a contract have executed a completely integrated written agreement, it supersedes all other understandings and agreements with respect to the subject matter of the agreement between the parties, whether consistent or inconsistent, and is viewed as the sole expression of the parties' intent. *Howard University v. Good Food Servs. Inc.*, 608 A.2d 116, 126–27 (D.C.1992); *Ozerol v. Howard University*, 545 A.2d 638, 641 (D.C.1988). Such an agreement supersedes all prior written and oral agreements. *Good Food, supra*, 608 A.2d at 127 n. 8. A completely integrated agreement is to be contrasted with a partially integrated agreement, where the writing represents the agreement of the parties with respect to the matters stated therein, but where there may be additional consistent terms. *Good Food, supra*, 608 A.2d at 126; *Ozerol, supra*, 545 A.2d at 641.

The question whether an agreement is completely integrated is a preliminary question of fact for the trial court. The court's factual inquiry must focus on the

gling out of arbitration agreements for special requirements. Likewise, the trial court did not address the issue whether Masurovsky can be treated as a third-party beneficiary of the arbitration clause in the first agreement. Whether these become live issues depends upon the outcome of further proceedings on remand, and we therefore do not address them.

intent of the parties at the time they entered the agreement. This intent must be sought where always intent must be sought, namely in the conduct and language of the parties and the surrounding circumstances. *The document alone will not suffice.* What it was intended to cover cannot be known until we know what there was to cover. Evidence in addition to the written agreement admissible for determining whether the parties' contract is completely, or only partially, integrated includes agreements or negotiations prior to or contemporaneous with the adoption of a writing.

*Good Food, supra,* 608 A.2d at 126–27 (quoting *Ozerol, supra,* 545 A.2d at 641 (quoting *Luther Williams, Jr., Inc. v. Johnson,* 229 A.2d 163, 165 (D.C.1967))) (citations omitted and emphasis altered).

Here the trial court reached its determination without holding an evidentiary hearing or otherwise addressing the "conduct and language of the parties and the surrounding circumstances" of the second agreement. Instead the trial court concluded that the second agreement was controlling based solely on the language of the agreement.

 Appellee maintains that no remand is necessary because the second agreement is clearly completely integrated on its face. Appellee relies on the first sentence of the agreement emphasizing that it states that "*this* letter sets forth *the* agreement" (emphasis added). Appellee asserts that the quoted language is "tantamount to an integration clause."

In support of his contention, appellee cites our decision in *Hercules & Co. v. Shama Restaurant Corp.,* 613 A.2d 916, 927–28 (D.C.1992), where we relied on the "facially unambiguous" language of an agreement to conclude that it was completely integrated. The contract at issue in *Shama Restaurant* was a standard form contract of the American Institute of Architects whose complete integration was challenged by Hercules, a construction company. *Id.* at 927–28. The contract contained two merger clauses and a specific enumeration of which extrinsic items were part of the contract documents. *Id.* The combination of these factors caused us

to conclude that it was "established beyond peradventure" that the agreement was completely integrated. *Id.* at 928.

We are not faced with such overwhelming evidence of complete integration here. The first sentence of the second agreement is not an integration clause, and it does not appear "tantamount" to one to us. As appellants point out, in addition to the reference to "the" agreement, the first sentence of the second agreement also indicates that Zweben will "continue to represent" Dr. Green. Moreover, we have previously recognized that "[t]he presence or absence of a merger clause indicating complete integration may be a significant, though not conclusive, factor in ascertaining the parties' intent." *Good Food, supra,* 608 A.2d at 127. While in cases like *Shama Restaurant* it may be possible to find complete integration from the face of the document, this is not such a case. Under the circumstances here, we believe that extrinsic evidence must be considered in order to determine whether the second agreement is completely integrated.

 Appellants cite us to cases suggesting that to the extent multiple agreements are not inconsistent, they should be read together. *See Egan v. McNamara,* 467 A.2d 733, 740 (D.C.1983); *Hodges v. United States Fidelity & Guaranty Co.,* 91 A.2d 473, 477 (D.C.1952). This is a useful rule of interpretation, but not a complete answer to the issue of complete integration. Whether an agreement is partially or completely integrated is a question of fact that requires an examination of the intent of the parties. *Good Food, supra,* 608 A.2d at 126–27; *Ozerol, supra,* 545 A.2d at 641–42. Relying on the bare record before us, we could not confidently say either that the second agreement was partially integrated or that it was completely integrated.

In sum, the trial court's reliance on "the document alone" was inadequate under our prior case law. Accordingly, we must remand so the trial court can definitively determine whether the second agreement was completely integrated in ruling on the motion to compel arbitration. *See Good Food, supra,* 608 A.2d at 126 ("The question whether

an agreement is completely integrated is a preliminary question of fact for the trial court."); *Haynes, supra,* 591 A.2d at 1289 ("The trial court must decide as a matter of law whether a particular dispute is arbitrable.").

## IV.

While agreeing with the forgoing analysis as far as it goes, appellants offer two alternative grounds that they say require not just a remand but outright reversal. First, they assert that because, as we suggest above, there is some ambiguity about whether the second agreement is completely integrated, the presumption in favor of arbitration mandates that the arbitrator, and not the trial court, decide the integration issue. Alternatively, appellants assert that because of this ambiguity, the presumption in favor of arbitration mandates the legal conclusion that the second agreement is not completely integrated and, consequently, that arbitration is required.

### A.

■ Appellants' first argument is directly refuted by the recent unanimous Supreme Court decision in *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). *Kaplan* involved a dispute between, on one side, Manuel and Carol Kaplan and their wholly owned investment company, MK Investments, Inc. (MKI), and, on the other, First Options, a stock clearinghouse, over an arbitration clause in a securities debt workout agreement. *Id.* at ——, 115 S.Ct. at 1922. The parties disputed whether the Kaplans as individuals had agreed to the arbitration clause. *Id.* The arbitrators decided that they had the power to determine if the Kaplans had agreed to arbitrate. *Id.* Before analyzing the substance of the parties' claims, the Court carefully distinguished among three types of disagreement present in that case.

First, the Kaplans and First Options disagree about whether the Kaplans are personally liable for MKI's debt to First Op-

tions. That disagreement makes up the *merits* of the dispute. Second, they disagree about whether they agreed to arbitrate the merits. That disagreement is about the *arbitrability* of the dispute. Third, they disagree about *who should have the primary power to decide the second matter.* Does that power belong primarily to the arbitrators ... or to the court ... ?

*Id.* at ——, 115 S.Ct. at 1923. Answering the last question, the Supreme Court made it clear that the courts, not arbitrators, are to determine whether the parties have agreed to arbitrate a particular matter, unless the parties themselves have agreed to submit the arbitrability question itself to arbitration. *Id.* at —— – ——, 115 S.Ct. at 1923–24. Furthermore, "when deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally (though with a qualification we discuss below) should apply ordinary state-law principles that govern the formation of contracts." *Id.* at ——, 115 S.Ct. at 1924.

The mentioned qualification is precisely the reverse of that argued by appellants here, because "when courts decide whether a party has agreed that arbitrators should decide arbitrability, [c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id.* (citation omitted). As the Supreme Court expressly noted, this is a complete reversal of the presumption in favor of arbitration, discussed in part II above, that applies when the question is "whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement." *Id.*

■ Interpretations of the Federal Arbitration Act are persuasive authority for interpreting the identical provisions of the D.C. Uniform Arbitration Act, *Beltway Carpet Serv., supra,* 592 A.2d at 1073,[3] and we follow *Kaplan*'s reasoning here. Accordingly, we hold that the presumption in favor of arbitration does not apply to the issue of whether the arbitrator or the trial court decides the

---

**3.** Appellants suggest that the Federal Arbitration Act, not the D.C. Uniform Arbitration Act, is the applicable law since the agreement at issue involves a Maryland doctor and a D.C. lawyer. *See* 9 U.S.C. § 2 (1996) (covering transactions in

"commerce"). We need not resolve that issue, since the two acts are materially the same in all respects relevant here, and our holdings in this opinion are consistent with federal interpretations.

validity of an arbitration agreement. Applying that rule to the record in this case, which is utterly bare of any indication that the parties intended to submit the arbitrability issue itself to arbitration, we conclude that the trial court on remand, and not the arbitrator, should decide if the second agreement is completely integrated.[4]

**B.**

We turn to appellants' second argument in favor of outright reversal. Although the Court in *Kaplan* did not directly address the applicability of the presumption in favor of arbitration to the issue of the existence of an agreement to arbitrate, the Court, as previously noted, reiterated the principle that "[w]hen deciding whether the parties have agreed to arbitrate a certain matter ... courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *Kaplan, supra,* 514 U.S. at ——, 115 S.Ct. at 1924. The Court did not indicate that these "ordinary state-law principles" were superseded by the federal presumption in favor of arbitration. Indeed, the Court's own articulation of this presumption in *Kaplan* was that it applied to the question whether a particular merits-related dispute was "within the scope of a valid arbitration agreement." *Id.*

We think it follows from the Court's discussion that the presumption in favor of arbitration attaches only after the trial court has determined that a valid agreement to arbitrate exists. Put another way, "the scales tip in favor of arbitration when we *construe* an arbitration clause, but only after we find, as an initial matter, that an enforceable arbitration clause exists." *Adamovic v. METME Corp.,* 961 F.2d 652, 654 (7th Cir. 1992) (citations omitted). *See also In re Arbitration Between Reading & Bates Corp. and All American Marine Slip,* 930 F.Supp. 895, 898 (S.D.N.Y.1996) (holding that presumption in favor of arbitration "is not applicable in determining whether the parties agreed to arbitration in the first place" but

applies only "after the determination that a contract contains an arbitration clause"). In *Kaplan* itself, the Third Circuit did not apply any presumption of arbitration in determining whether the Kaplans had agreed to arbitrate the merits. *See Kaplan v. First Options of Chicago Inc.,* 19 F.3d 1503, 1512 (3d Cir.1994), *aff'd,* —— U.S. ——, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

Appellants argue that even if the presumption is inapplicable to determining the existence of an initial agreement to arbitrate, it still should apply to a situation, such as here, where the issue is whether such an agreement has been terminated. In support of this proposition appellants cite *McKinney v. Emery Air Freight Corp.,* 954 F.2d 590, 593 (9th Cir.1992) and *Commonwealth Edison Co. v. Gulf Oil Corp.,* 541 F.2d 1263, 1271 (7th Cir.1976). Those cases indicated that arbitration was appropriate for claims of termination, rescission or frustration. *Id.* But here we face a different issue. The underlying question here is whether, at the time the dispute arose, any valid agreement to arbitrate the dispute existed between the parties. "[A]rbitration is simply a matter of contract between the parties: it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *Kaplan, supra,* 514 U.S. at ——, 115 S.Ct. at 1924. We think that this initial determination whether a "valid arbitration agreement" exists must be determined apart from the presumption. Accordingly, we conclude that the trial court on remand should determine if the second agreement is completely integrated without regard to the presumption in favor of arbitration.

*Order vacated and case remanded for proceedings consistent with this opinion.*

---

4. "In a closely analogous situation, we have held that a trial court, in reviewing an arbitrator's award, must make its own determination under D.C. Code §§ 16–4302(a), 4311(a)(5) whether a particular party had consented to arbitration of the disputed claim, without any degree of deference to the arbitrator's decision. *Grad v. Wetherholt Galleries,* 660 A.2d 903, 907–08 (D.C. 1995)."