Frank SUMMERS, et al., Plaintiffs,

v.

HOWARD UNIVERSITY, Defendant.

No. CIV. A. 98–2692 SSH.

United States District Court,
District of Columbia.

Dec. 22, 2000.

John Fitzgerald Kennedy, Kennedy & Dolan, Silver Spring, MD, for Plaintiffs.

Leroy T. Jenkins, Jr., Howard University, Office of Legal Affairs, Washington, DC, for Defendant.

1. On July 17, 2000, plaintiffs filed a supplement to their motion for partial summary judgment. On July 24, 2000, defendant filed a motion to strike plaintiffs' supplement, to which plaintiffs have not responded. Because plaintiffs did not file an opposition to defendant's motion to strike, the Court grants defendant's motion as conceded. See Local Civil Rule 7.1(b).

2. SOs are unarmed and are generally assigned to provide security at a stationary post;

## OPINION AND ORDER

STANLEY S. HARRIS, District Judge.

Before the Court are defendant's Amended Motion To Dismiss and for Partial Summary Judgment, plaintiffs' Motion for Partial Summary Judgment, the parties' respective oppositions to these motions, and plaintiffs' reply to defendant's opposition.[1] Upon consideration of the parties' submissions and the entire record in this case, the Court grants in part and denies in part defendant's motion, and denies plaintiffs' motion. Although findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56, see Fed.R.Civ.P. 52(a); Summers v. Department of Justice, 140 F.3d 1077, 1079–80 (D.C.Cir.1998), the Court sets forth its reasoning.

## BACKGROUND

Plaintiffs are security personnel—security officers ("SOs") and special police officers ("SPOs")—employed in defendant Howard University's campus police department.[2] Plaintiffs' amended complaint asserts claims for overtime compensation under the Fair Labor Standards Act (the "FLSA" or the "Act"), 29 U.S.C. §§ 201 et seq., and, alternatively, claims for breach of contract under the parties' Collective Bargaining Agreement ("CBA").[3] Plaintiffs' first claim alleges that, since July 1998, defendant has required plaintiffs to work eight-and-a-half-hour daily shifts, while compensating them for only eight-hour shifts; although plaintiffs are given a half-hour meal break during their shifts, they contend that these breaks constitute compensable "work" under the FLSA be-

SPOs are armed, can make arrests, and are assigned to either a stationary post or a patrol. See Smith Dep. 46:9—47:15.

3. Although this action was originally brought by three plaintiffs, on May 26, 1999, the Court granted approval to open up the lawsuit to present and past similarly-situated employees. The current class of plaintiffs exceeds 70 SOs and SPOs.

cause defendant imposes a number of restrictions on their activity during these periods. Am. Compl. ¶ 12. Plaintiffs contend that defendant's policies violate 29 U.S.C. § 207(a), and that they are entitled to compensation for 150 minutes of overtime per five-day work week at a rate of one-and-a-half times their regular rate of pay; plaintiffs seek recovery for this amount, and a commensurate amount of liquidated damages, under 29 U.S.C. § 216(b). *Id.* ¶¶ 12–20. Alternatively, plaintiffs seek overtime compensation for their purported meal periods under the terms of the CBA. *Id.* ¶¶ 23–28.[4] Plaintiffs' second claim alleges that defendant has violated the FLSA by failing to compensate them for "pre-shift and post-shift work"; plaintiffs contend that they are entitled to approximately 150 minutes of overtime compensation per five-day work week and a commensurate amount of liquidated damages. *Id.* ¶¶ 29–39. Alternatively, plaintiffs contend that they are entitled to overtime compensation for their alleged pre- and post-shift work under the terms of the CBA. *Id.* ¶¶ 40–45. Finally, plaintiffs allege that defendant has violated the CBA by failing to provide plaintiffs with two ten-minute breaks per work shift.[5] *Id.* ¶¶ 46–51.

## DISCUSSION

### A. *Defendant's Motion To Dismiss and for Partial Summary Judgment*

Defendant moves to dismiss plaintiffs' breach of contract claims on the ground that plaintiffs did not submit their claims to arbitration as required by the CBA.[6] Federal Rule of Civil Procedure 12(b) states that a motion making any of the defenses listed therein "shall be made before pleading if a further pleading is permitted." Because defendant filed its motion to dismiss in this case after it filed its amended answer, its motion runs afoul of the restriction in Rule 12(b). Nevertheless, the Court will exercise its discretion and treat defendant's motion as a motion for judgment on the pleadings under Rule 12(c).[7] *See Hallberg v. Pasco County, Florida,* 1996 WL 153673, *2 (M.D.Fla. Mar.18, 1996); *Perkins v. University of Ill. at Chicago,* 1995 WL 680758, *1 (N.D.Ill. Nov.14, 1995); *Eldridge v. Springs Indust., Inc.,* 882 F.Supp. 356, 357 (S.D.N.Y.1995). In resolving a motion for judgment on the pleadings, a court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Peters v. National R.R. Passenger Corp.,* 966 F.2d 1483, 1485 (D.C.Cir. 1992) (internal quotation marks and citation omitted). "A court will grant a motion for judgment on the pleadings only if, after the close of the pleadings, no material fact remains in dispute, and the moving party is entitled to judgment as a matter of law." *Transworld Prods. Co. v. Canteen Corp.,* 908 F.Supp. 1 (D.D.C.1995).

On a Rule 12(c) motion, "[i]f ... matters outside the pleadings are presented to and

---

**4.** Plaintiffs have clarified that, with respect to the meal-break issue, the SOs' claim is limited to the period from June 14, 1998, to August 1, 1999. The SPOs' meal-break claim, however, covers the period from June 14, 1998, to the present. *See* Pls.' Reply at 15.

**5.** Plaintiffs' amended complaint states that this claim is made "in the alternative." Am. Compl. ¶ 46. Nevertheless, plaintiffs have not pleaded a corresponding FLSA claim with respect to defendant's alleged failure to provide them two ten-minute breaks per shift.

**6.** Defendant also moves to dismiss plaintiffs' overtime claims under the CBA on the ground

that plaintiffs are estopped from asserting those claims because they did not comply with defendant's "clear policy of requiring the submission of daily overtime sheets for officers who believed they were entitled to overtime." Def.'s Am. Mot. at 4. The Court finds it unnecessary to consider this argument because it concludes that plaintiffs were required to submit their CBA claims to arbitration.

**7.** In a footnote, plaintiffs imply that defendant may not file a motion to dismiss at this stage in the litigation, but state that they do not oppose defendant's motion on that ground. *See* Pls.' Opp'n at 1 n. 1.

not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 ...." Fed.R.Civ.P. 12(c). Summary judgment may be granted only if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a summary judgment motion, all evidence and the inferences to be drawn from it must be considered in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Mere allegations in the pleadings, however, are not sufficient to defeat a summary judgment motion; if the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The CBA establishes elaborate procedures for presenting employee grievances for internal review and, if necessary, arbitration (the "Grievance/Arbitration Procedures"). *See* Def.'s Sept. 20, 2000, Praecipe (hereinafter "Praecipe"), Ex. B, Article 15. An aggrieved employee must first discuss a grievance with the employee's immediate supervisor within ten days of the date of the grievance or the employee's knowledge of its occurrence. *See id.*, Article 15.3 (Step One). If the grievance is not resolved, it must be presented in writing to the Director of Security within three days of the meeting with the supervisor; the Director of Security then must meet with the aggrieved employee and the President of the Metropolitan Special Police Officers Federation (the "Union"), and provide a written decision within ten days of receiving the written grievance. *See id.* (Step Two).

The Union may appeal the Director of Security's decision to Howard University's Director of Employee and Labor Relations or the Chief Executive of the Hospital, who must render a written decision within 21 days. *See id.* (Step Three). The Union may appeal the subsequent decision within seven days, which triggers the arbitration process. *See id.* (Step Four).

▌ Defendant alleges that plaintiffs failed to avail themselves of the Grievance/Arbitration Procedures and that this alleged failure bars them from asserting their contract claims in this case.[8] Under both federal law and the law of the District of Columbia, there is a strong policy favoring arbitration where parties to an agreement have established a mechanism for submitting claims to arbitration. *See, e.g., In re District No. 1–Pacific Coast Dist., Marine Eng'rs' Beneficial,* 723 F.2d 70, 77 (D.C.Cir.1983) (citing *United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960)); *Masurovsky v. Green,* 687 A.2d 198, 201 (D.C.1996). Where an agreement contains an arbitration provision, a court must require the parties to submit disputed claims to arbitration absent an indication that the parties intended to exclude the subject matter of the claims from the scope of the arbitration provision. *See In re District No. 1–Pacific Coast Dist., Marine Eng'rs' Beneficial,* 723 F.2d at 77; *Masurovsky,* 687 A.2d at 201–02. In this case, although the CBA does not contain an express provision stating that all grievances must be submitted pursuant to the Grievance/Arbitration Procedures, the language of Article 15 suggests that those procedures are mandatory. *See, e.g.,* Praecipe, Ex. B, Article 15.3 (Step One) ("The aggrieved employee and the Union representative, if requested, shall discuss the grievance with the employee's immediate supervisor ...."); *id.,* Article 15.3 (Step Two) ("If the grievance is not resolved at Step 1, it shall

---

**8.** Defendant does not contend that plaintiffs must also pursue their FLSA claims pursuant

to the Grievance/Arbitration Procedures. *See* Def.'s Am. Mot. at 6 n. 1.

be presented in writing to the Director of Security ...."); *id.*, Article 15.8 ("In the event that the Employer fails to meet the time constraints stated herein, the aggrieved employee shall have the right to proceed to the next grievance level."). In any event, there is no indication that the parties to the CBA intended to exclude the subject-matter of plaintiffs' contract claims—overtime compensation and rest breaks—from the scope of the arbitration provisions. Accordingly, plaintiffs must pursue their contract claims pursuant to the Grievance/Arbitration Procedures.[9]

■ Plaintiffs do not allege that they have availed themselves of the grievance procedures with respect to their overtime claims under the CBA, but do allege that their break claim has been grieved administratively. *See* Pls.' Opp'n at 2 n. 2. In support of their allegation, plaintiffs supply copies of two grievance forms indicating that, on January 11 and February 21, 1999, plaintiff Paul Cook (and the Union on his behalf) requested that defendant allow him to take two ten-minute breaks per shift as required by Article 8.5.1 of the CBA; the February 21st request indicates that Mr. Cook's supervisor denied his request.[10] The Court finds these grievance forms insufficient to satisfy the Grievance/Arbitration Procedures because they represent only one plaintiff's attempts to exhaust those procedures; there is no indication that the remaining plaintiffs attempted to submit their break claim in this manner. In any event, at most, Mr. Cook can be deemed to have exhausted only two of the four requisite steps in Article 15.3; the record does not indicate that the denial of his claim was ever appealed to the Director of Employee and Labor Relations or the Chief Executive of the Hospital (Step Three), or thereafter appealed to arbitration (Step Four). Although Mr. Cook may never have received a written decision denying his request for two ten-minute breaks (as contemplated by Step Two of Article 15.3), he was authorized to proceed to the next step of the grievance process, *see* Praecipe, Ex. B, Article 15.8, which he did not do. In sum, because none of the plaintiffs in this case have properly availed themselves of the Grievance/Arbitration Procedures, defendant is entitled to judgment as a matter of law on plaintiffs' breach of contract claims.

■ Defendant also moves for partial summary judgment on plaintiffs' claims under the FLSA, which seek overtime compensation for pre- and post-shift work and work performed during their meal breaks. Relying on *Biggs v. Joshua Hendy Corp.*, 183 F.2d 515 (9th Cir.1950), and

9. Plaintiffs rely on *Air Line Pilots Ass'n, Int'l v. Northwest Airlines, Inc.*, 199 F.3d 477 (D.C.Cir.1999), *judgment reinstated*, 211 F.3d 1312 (D.C.Cir.2000) (en banc), *petition for cert. filed*, 69 USWL 3157 (Aug. 16, 2000), and *Albertson's, Inc. v. United Food & Commercial Workers Union, AFL–CIO & CLC*, 157 F.3d 758 (9th Cir.1998), for the proposition that "[u]nions cannot bargain-away plaintiffs' rights to proceed to Court with issues raised by contract violations." Pls.' Opp'n at 3. Plaintiffs' reliance on those cases is misplaced. Both cases distinguish between an agreement to arbitrate statutory claims and an agreement to arbitrate contract claims under a collective bargaining agreement, and summarize Supreme Court precedent holding that, absent contrary congressional intent, a union may not bargain away an employee's "individual statutory right to a judicial forum ...; the statutory right can form no part of the collective bargaining process." *Air Line Pilots Ass'n, Int'l*, 199 F.3d at 483–85 (internal quotation marks and citation omitted); *accord Albertson's, Inc.*, 157 F.3d at 760–62. As already indicated, defendant does not argue that plaintiffs must submit their claims under the FLSA to arbitration, *see supra* note 8, but rather argues only that plaintiffs must submit their contract claims to arbitration. Neither case cited by plaintiffs alters the well-settled presumption that an agreement to arbitrate claims arising under a collective bargaining agreement is enforceable.

10. Plaintiffs submitted the grievance forms with their reply, but did not number them as exhibits for purposes of their reply. Because the grievance forms are not part of the pleadings, and have not been incorporated therein, the Court converts defendant's motion for judgment on the pleadings into one for summary judgment. *See* Fed.R.Civ.P. 12(c).

*Kohlheim v. Glynn County, Georgia,* 915 F.2d 1473 (11th Cir.1990), defendant contends that ."any overtime a plaintiff was paid for hours worked beyond eight (8) hours per day or forty (40) hours per week should be deducted from any amount that individual would be owed under a[n] FLSA analysis." Def.'s Am. Mot. at 6. The cases cited by defendant, however, do not support its contention, as they hold only that compensation paid in excess of that required under the Act is properly deductible from any overtime compensation otherwise recoverable under the Act. *See Kohlheim,* 915 F.2d at 1481; *Biggs,* 183 F.2d at 517. Indeed, these holdings merely reaffirm Congress's directive that "extra compensation" paid by an employer "shall be creditable toward overtime compensation payable" under the Act. 29 U.S.C. § 207(h)(2) (1994). Defendant has not established, nor does the record show, that plaintiffs were ever paid overtime compensation in excess of that required by the FLSA. Accordingly, defendant's offset claim lacks merit.

### B. *Plaintiffs' Motion for Partial Summary Judgment*

Plaintiffs move for summary judgment on their FLSA meal-break claim. The FLSA requires employers to compensate their employees at one-and-a-half times employees' regular rate of pay when they cause them to work more than forty hours a week. *See* 29 U.S.C. § 207(a)(1). As discussed, plaintiffs allege that they work one half-hour of unpaid overtime each day of their forty-hour work week because restrictions on their meal-break activity effectively result in their performing \compensable "work" within the meaning of the FLSA. These restrictions require plaintiffs, *inter alia,* to remain in uniform, *see* Smith Dep. 86:4–8, remain on Howard University campus unless they check in their weapons and equipment at the service center of the campus police department on their own time, *see id.* at 64:3–24; Pls.' Mot., Ex. 1, Resp. to Request for Admission Nos. 67–68, respond to emer-

gencies and crimes committed in their presence, *see* Smith Dep. 88:4–21, 89:10—90:9, 94:4—95:3, and respond to public inquiries, *see* Pls.' Mot., Ex. 1, Resp. to Request for Admission No. 44.

The FLSA does not define what constitutes compensable "work." Nevertheless, the Supreme Court shed light on the scope of this term in a number of cases decided over half a century ago. In *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944), the Court held that Congress used the term "work" in the Act to "mean[ ] physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." In two other cases decided that same year, the Court elaborated that whether an employee is working—*i.e.,* spending a given period of time predominantly for the benefit of the employer—necessarily requires a fact-intensive inquiry. *See Armour & Co. v. Wantock,* 323 U.S. 126, 133, 65 S.Ct. 165, 89 L.Ed. 118 (1944) ("Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case."); *Skidmore v. Swift,* 323 U.S. 134, 136, 65 S.Ct. 161, 89 L.Ed. 124 (1944) ("Whether in a concrete case such time falls within or without the Act is a question of fact to be resolved by appropriate findings of the trial court.").

For its part, the Department of Labor ("DoL") has attempted to delimit the boundaries of compensable "work" under the Act by issuing interpretive regulations that define "bona fide meal periods." According to these regulations, a bona fide meal period does not constitute "worktime"; however, in order to qualify as a bona fide meal period, "[t]he employee must be completely relieved from duty for the purposes of eating regular meals." 29 C.F.R. § 785.19(a); *see also* 29 C.F.R. § 553.223 (defining bona fide meal period

for 29 U.S.C. § 207(k)'s firefighter and law-enforcement exception in substantially similar terms).

The Supreme Court opinions and DoL regulations discussed above have led the federal courts to adopt different standards for determining whether an employee is engaged in work during meal periods. Largely relying on the language in the Supreme Court opinions, a majority of circuits addressing this issue have held that an employee engages in work during a meal period if he performs activity predominantly for the benefit of the employer. *See Reich v. Southern New England Telecomms. Corp.,* 121 F.3d 58, 64–65 (2d Cir. 1997); *Henson v. Pulaski County Sheriff Dept.,* 6 F.3d 531, 534 (8th Cir.1993); *Alexander v. City of Chicago,* 994 F.2d 333, 337 (7th Cir.1993); *Lamon v. City of Shawnee, Kansas,* 972 F.2d 1145, 1155–57 (10th Cir. 1992); *Hill v. United States,* 751 F.2d 810, 812–14 (6th Cir.1984). Relying more literally on the language in the DoL regulations, a minority of circuits have held that an employee engages in work during meal periods unless he is completely relieved from duty. *See Kohlheim,* 915 F.2d at 1476–77; *Donovan v. Bel–Loc Diner, Inc.,* 780 F.2d 1113, 1115 n. 1 (4th Cir.1985).[11] The parties in this case correctly note that the Court of Appeals for this Circuit has never addressed whether the predominant benefit standard or the completely-relieved-from-duty standard is the more appropriate gauge of "work" under the Act.

■ In the absence of controlling precedent, the Court will apply the predominant benefit standard because it provides a flexible standard that is consistent with the language of the FLSA and governing case law. *See Southern New England Telecomms. Corp.,* 121 F.3d at 65; *Henson,* 6 F.3d at 534. Although the DoL's interpretation of the scope of compensable "work" under the FLSA is entitled to deference, it is not binding on the courts. *See Skidmore,* 323 U.S. at 140, 65 S.Ct. 161 ("We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."). The Court declines to apply § 785.19(a)'s completely-relieved-from-duty standard because, as the Second and Eight Circuits have found, this standard is inconsistent with controlling Supreme Court precedent. *See Southern New England Telecomms. Corp.,* 121 F.3d at 65; *Henson,* 6 F.3d at 535. Moreover, in practice, the DoL appears to have applied § 785.19(a) in a manner more closely resembling the predominant benefit standard than the completely-relieved-from-duty standard. *See Pls.' Reply,* Ex. 3 (1980 wage-hour opinion letter from DoL deputy administrator indicating that requirement that a Postal Service letter carrier safeguard mail in his possession during lunch periods would lead to compensable work "only if the postal material in his possession were of such quantity or of such nature that the carrier was sub-

---

**11.** The Eleventh Circuit distinguishes between 29 C.F.R. §§ 785.19(a) and 553.223(b); as noted, § 785.19(a) interprets the general provision in 29 U.S.C. § 207(a), whereas § 553.223(b) interprets the firefighter and law-enforcement exception in 29 U.S.C. § 207(k). The Eleventh Circuit applies the predominant benefit standard in the latter context. *See Avery v. City of Talladega,* 24 F.3d 1337, 1345–47 (11th Cir.1994). The remaining circuits do not appear to apply different standards in the two contexts. *See, e.g., Henson,* 6 F.3d at 534 ("Because [the predominant benefit] standard is flexible, it allows courts to consider different factors de-

pending on the nature of the business involved, whether the dispute involves factory workers or firefighters."); *Alexander,* 994 F.2d at 336–37 ("There is no reason to assume section 553.223(b) is separate and distinct from section 785.19(a); in fact, section 553.223(b) incorporates 'all the other tests in § 785.19.' ") (quoting § 553.223(b)); *cf. Lamon,* 972 F.2d at 1158 n. 18 (noting that the court's "contrasting of the two sections, § 553.223(b) and § 785.19, does not mean that the 'completely relieved from duty' standard as used in the latter section should necessarily take on a different meaning than that of the former section").

stantially impeded in the free disposition of the time for his own beneficial use."); *see also Southern New England Telecomms. Corp.*, 121 F.3d at 64 (discussing 1985 wage-hour opinion letter).

■ Applying the predominant benefit test to plaintiffs' meal-break claim requires the Court to ascertain whether the restrictions imposed on plaintiffs during their meal periods cause them to engage in activities predominantly for the benefit of defendant. On the record before it, however, the Court finds that this issue is inappropriate for summary judgment because the scope and practical effect of a number of restrictions remain unclear. Notably, case law indicates that whether employees are required to remain at their work site during meal periods is an important factor in the predominant benefit analysis. *See, e.g., Southern New England Telecomms. Corp.*, 121 F.3d at 66 (requirement that employees remain at job site supported finding of work); *Henson*, 6 F.3d at 536 (fact that officers allowed to leave patrol area during their meal break weighed against finding of work); *Armitage v. City of Emporia, Kansas*, 982 F.2d 430, 431–32 (10th Cir.1992) (finding detectives not primarily engaged in work related duties; detectives allowed to eat lunch anywhere). As already noted, plaintiffs are permitted to leave campus during their meal break as long as they first check in their weapons and equipment at the service center. Nevertheless, they must do so on their own time—*i.e.*, after their meal break has begun—and the record indicates that the process of traveling to the service center and completing the check-in consumes between ten and fifteen minutes of the allotted half-hour break. *See, e.g.,* Summers Dep. 51:5–10; Burroughs Dep. 22:12–20; Wyman Dep. 49:13–22. Thus, although defendant's policy officially permits plaintiffs to leave campus, the requirement that employees check in their weapons and equipment on their break time before doing so may prevent some plaintiffs (at least those who are armed

SPOs) from exercising this option. The record, however, does not disclose whether plaintiffs actually exercise the option to leave campus—and, if so, in what numbers and with what difficulty—which prevents the Court from adequately ascertaining the degree to which plaintiffs' ability to leave campus is restricted in practice and, consequently, the degree to which plaintiffs' presence on campus during their meal breaks inures to defendant's benefit.

Uncertainty surrounding other restrictions imposed on plaintiffs also renders summary judgment inappropriate. For example, plaintiffs complain that they are required to respond to emergencies and crimes committed in their presence during meal breaks. Nevertheless, the record does not reveal how frequently such situations typically arise during a given plaintiff's meal break. *See Alexander*, 994 F.2d at 339 n. 10 ("The . . . predominant benefit test—while conceivably applicable purely as a matter of law in some instances— necessarily involves some informed appraisal of how the particular mealtime limitations actually affected the officers' mealtimes."). Moreover, the Chief of Howard University's campus police department testified at his deposition that plaintiffs receive remuneration for the time they spend responding to crimes committed in their presence during meal breaks, *see* Smith Dep. 88:4—89-6; depending on the monetary rate of remuneration and the scope of its availability in practice, such compensation could render the duty-to-respond requirement moot under the predominant benefit analysis. *Cf. Armitage*, 982 F.2d at 431–32 (finding detectives not primarily engaged in work related duties; detectives compensated at overtime rate when called back to duty during lunch). Plaintiffs also allege that defendant requires them to remain vigilant and to maintain a highly visible presence during their breaks. Again, because the record does not reveal how these requirements operate in practice, the Court cannot de-

termine the extent to which they inure to the benefit of defendant.[12]

To be sure, the contours of some restrictions imposed on plaintiffs are clear from the record, and a number of them militate in favor of a finding of compensable work; for example, plaintiffs are required to travel to their break destination and check in their weapons and equipment on their own break time. *Cf. Henson,* 6 F.3d at 536 (finding officers' meal times not predominantly for the benefit of employer where break began when officers reached break destination and officers could return to station and change into civilian clothes before break began); *Armitage,* 982 F.2d at 431–32 (finding detectives not primarily engaged in work related duties; detectives compensated for time spent traveling to and from home during lunch).[13] At the same time, however, some restrictions cited by plaintiffs do not necessarily compel a finding that they spend their breaks predominantly for the benefit of their employer. For example, although plaintiffs complain that they are required to remain in uniform and respond to public inquiries during their meal breaks, courts assessing such restrictions have found them insufficient to support a finding of "work" under the Act. *See, e.g., Avery v. City of Talladega,* 24 F.3d 1337, 1346–47 (11th Cir.1994) (involving requirement of remaining in uniform); *Henson,* 6 F.3d at 536 (involving requirement of responding to public inquiries); *Armitage,* 982 F.2d at 431–32 (same). Given the differing nature and significance of the meal-break restrictions, as well as the factual uncertainty surrounding a number of those restrictions, the Court does not conclude that, as a matter of law, plaintiffs spend their meal breaks predominantly for the benefit of defendant. Accordingly, it hereby is

ORDERED, that plaintiffs' Motion for Partial Summary Judgment is denied. It hereby further is

ORDERED, that defendant's Amended Motion To Dismiss and for Partial Summary Judgment is granted in part and denied in part. Judgment is entered in defendant's favor on plaintiffs' contract claims under the Collective Bargaining Agreement. It hereby further is

ORDERED, that defendant's Motion To Strike is granted.

SO ORDERED.

---

**12.** These restrictions may not be as rigid or rigorous as plaintiffs suggest. For example, plaintiffs are permitted to play pool at the campus recreation center, *see* Smith Dep. 74:5–20, and to leave the Howard University campus during their breaks.

**13.** Defendant also imposes a number of minor restrictions on plaintiffs' demeanor and appearance during meal breaks. *See, e.g.,* Pls.' Mot., Ex. 1, Resp. to Request for Admission No. 22 (plaintiffs must maintain professional demeanor); *id.,* Resp. to Request for Admission No. 43 (plaintiffs must be clean, neat, and well-groomed); Smith Dep. 78:12–24 (plaintiffs not permitted to take off shirt and sun tan); *id.* at 79:18—80:17 (plaintiffs not permitted to use profanity).