*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 11-CV-1651

KAMAL JAHANBEIN, APPELLANT,

v.

THE NDIDI CONDOMINIUM UNIT OWNERS
ASSOCIATION, INC., ET AL., APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAB-5755-11)

(Hon. Michael Lee Rankin, Trial Judge)

*Laurance J. Ochs*, for appellant.

*Ziad P. Haddad*, for appellees Ndidi Condominium Owners Association, Inc. and Jamal Sahri.

(Argued November 28, 2012                         Decided February 27, 2014)

Before BECKWITH and EASTERLY, *Associate Judges*, and SCHWELB, *Senior Judge*.

BECKWITH, *Associate Judge*:  Appellant Kamal Jahanbein, a unit owner and member of the Ndidi Condominium Unit Owners Association, Inc. (the Condo Association), sued the Condo Association for breach of fiduciary duty and sued Jamal Sahri, a fellow unit owner, for negligence, after the water pipes in Mr.

Sahri's unit burst and allegedly damaged Mr. Jahanbein's unit. Both the Condo Association and Mr. Sahri moved to compel arbitration pursuant to D.C. Code § 16-4407 (a) (2012 Repl.),[1] alleging that the trial court did not have subject matter jurisdiction because § 15.9 of the Condo Association's Bylaws (the Bylaws), adopted under D.C. Code § 42-1901.01 *et seq.* (2012 Repl.), constituted an enforceable agreement that required alternative dispute resolution of Mr. Jahanbein's claims. Mr. Jahanbein opposed the motions, arguing (1) that his claims against appellees were tort claims, not contract claims, and so the Bylaws were inapplicable and (2) that with respect to the claim against Mr. Sahri, the Bylaws did not create a contract between unit owners and Mr. Sahri thus had no right to compel arbitration of the claim against him. Superior Court Judge Michael Rankin granted the motions to compel arbitration, and Mr. Jahanbein appealed to this court. For the reasons explained below, we affirm in part, reverse in part, and remand for further proceedings.

## I.    Background

Kamal Jahanbein owned and lived in Unit 2 of the seven-unit Ndidi

---

[1]  D.C. Code § 16-4407 (a) requires that when a person can "show[] an agreement to arbitrate" and that another "refu[ses] to arbitrate pursuant to the agreement," the court "shall . . . order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate."

Condominium building located at 1210 V Street, N.W., in Washington, D.C. Jamal Sahri owned Units 4 and 6 in the same complex. On January 19, 2009, water pipes burst in Mr. Sahri's Unit 6, allegedly causing damage to Mr. Jahanbein's unit and to common areas of the complex. According to Mr. Jahanbein, a contractor calculated the costs of this damage—excluding the costs from damage to Mr. Jahanbein's personal property and living expenses incurred during the time his unit was uninhabitable—to exceed $15,000. Mr. Jahanbein alleged that the Condo Association failed to pay him any portion of the insurance proceeds it received for the damage to account for the amount it collected based on damage to his unit.[2]

Mr. Jahanbein filed a complaint in Superior Court against the Condo Association and Mr. Sahri alleging (1) breach of fiduciary duty for the Condo Association's failure to turn over insurance proceeds collected on behalf of Mr. Jahanbein and (2) negligence for Mr. Sahri's failure to properly heat his unit, causing the pipes to burst and damage Mr. Jahanbein's unit. The trial court dismissed Mr. Jahanbein's complaint for lack of subject matter jurisdiction and granted appellees' motions to compel arbitration, concluding that § 15.9 of the

---

[2] Mr. Jahanbein claims the Condo Association informed him it was holding $10,045.00 of the insurance proceeds for "repairs" to Mr. Jahanbein's unit but refused to turn this or any amount over to Mr. Jahanbein upon his request.

Bylaws applied to the claims against the Condo Association and that the Bylaws also "specifically provide[d]" that the arbitration procedures "appl[ied] to disputes between unit owners."

## II.    Analysis

On appeal, Mr. Jahanbein raises two legal questions: (1) whether the trial court erred when it read the Bylaws to create an enforceable agreement to arbitrate between Mr. Jahanbein and each defendant, and (2) whether the court erred in concluding it had no subject matter jurisdiction. The two questions are related and involve the question of "arbitrability."

"Arbitrability refers to whether the parties agreed to arbitrate a particular type of issue and is subject to de novo review." *Certain Underwriters at Lloyd's London v. Ashland, Inc.*, 967 A.2d 166, 173 (D.C. 2009). Before compelling arbitration under District of Columbia law, a court must find that the parties have an enforceable agreement to arbitrate and that "the underlying dispute between the parties falls within the scope of the agreement." *Meshel v. Ohev Sholom Talmud Torah*, 869 A.2d 343, 354 (D.C. 2005). For the second part of this inquiry—the question of "arbitrability"—we have a preference for arbitration such that when "ambiguity as to whether a matter is within the scope of an arbitrator's authority [exists], any doubts are to be resolved in favor of arbitration." *Hercules & Co. v.*

*Shama Rest. Corp.*, 613 A.2d 916, 922 (D.C. 1992). This preference is limited, however, because "arbitration is a matter of contract[,]" and we therefore may not require a party "to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). In addition, "if the court has 'positive assurance' that the parties did not intend the dispute *sub judice* to be resolved through arbitration, then the court may not compel arbitration, because to do so would be contrary to the parties' agreement." *2200 M Street, LLC v. Mackell*, 940 A.2d 143, 152 (D.C. 2007).

## A. Mr. Jahanbein and the Condo Association

### 1. An Enforceable Agreement To Arbitrate

Our case law leaves little room to dispute that the Bylaws represent an agreement between Mr. Jahanbein and the Condo Association. "A condominium instrument, such as the bylaws, is a contract between the unit owners and the condominium association." *1230-1250 Twenty-Third St. Condo. Unit Owners Ass'n v. Bolandz*, 978 A.2d 1188, 1191 (D.C. 2009); *see also Burgess v. Pelkey*, 738 A.2d 783, 787-88 (D.C. 1999) ("The cooperative instruments, which include the bylaws and sales agreement, constitute a contract governing the legal relationship between the cooperative association and the unit owners.").

Condominium bylaws, by statutory definition, are a set of rules "providing for the self-government of the condominium by an association of all the unit owners." D.C. Code § 42-1903.01 (2012 Repl.); *see also Johnson v. Hobson*, 505 A.2d 1313, 1317 (D.C. 1986) (quoting *Hidden Harbour Estates, Inc. v. Norman*, 309 So. 2d 180, 181-182 (Fla. Dist. Ct. App. 1975)) ("It is well established that the governing body of a condominium enjoys broad authority in regulating the affairs of the property. . . . '[I]nherent in the condominium concept is the principle that to promote the health, happiness, and peace of mind of the majority of unit owners since they are living in such close proximity and using facilities in common, each unit owner must give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property.'"). The Ndidi Bylaws are not unique in this regard: Section 3, titled "Purpose and Application of Bylaws," states that "[t]hese Bylaws . . . provide for the self-government of the Condominium" and that "[t]he administration and management of the Condominium and the actions of the Unit Owners and the Unit Owners Association and its Board of Directors and officers shall be governed by these Bylaws."

It is clear that the Bylaws represent not just an agreement between Mr. Jahanbein and the Condo Association, but also an enforceable agreement *to arbitrate* certain disputes between Mr. Jahanbein and the Condo Association.

Section 15.9 of the Bylaws requires alternative dispute resolution to resolve "disagreements . . . over the meaning, terms, conditions and applicability of . . . [every Bylaw] provision."[3] Therefore, because the Bylaws constitute a binding contract between Mr. Jahanbein and the Condo Association and the Bylaws contain an arbitration clause that applies to every provision therein, the first prong of the inquiry—whether there exists an enforceable agreement to arbitrate certain disputes between Mr. Jahanbein and the Condo Association—is satisfied. We agree with the trial court that such an agreement exists.

---

[3] The relevant text of § 15.9 reads:

> Each provision contained in either the Ndidi Condominium Declaration or the Ndidi Condominium By-Laws shall be deemed to contain a provision to submit a disagreement between either the Unit Owners, the Unit Owners Association, its Board of Directors or its officers over the meaning, terms, conditions and applicability of the provision to,
>
> (a) Negotiation, . . .
>
> (b) Mediation, . . . ; and finally
>
> (c) Arbitration. . . .
>
> A judgment of the Superior Court of the District of Columbia shall be rendered upon an award or determination made pursuant to this Addendum Agreement. This agreement is enforceable as to all parties who have agreed to negotiate, mediate or arbitrate as acknowledged by their signatures.

## 2. The Scope of Arbitrable Issues

Having decided that the Bylaws constitute an enforceable agreement to arbitrate at least some disputes between Mr. Jahanbein and the Association, we turn to the question whether this particular dispute falls within the scope of the arbitration clause. *Masurovsky v. Green*, 687 A.2d 198, 202 (D.C. 1996). If the arbitration clause is "susceptible of an interpretation that arbitration is required for [the] particular dispute . . . the trial court must order arbitration." *Id.* (internal quotation marks and citations omitted).

The Condo Association contends that Mr. Jahanbein's complaint must be submitted to arbitration because it involves "disagreements" over the "meaning" and "applicability" of various Bylaw provisions, pursuant to § 15.9 of the Bylaws. Specifically, in the view of the Condo Association, § 15.9, when read in conjunction with § 10 of the Bylaws—the section addressing "Insurance, Destruction, Restoration, Condemnation and Distribution"—requires arbitration in this case, particularly given our preference for arbitration. Mr. Jahanbein counters that the Condo Association points to no provision in § 10 that either permits it to withhold insurance proceeds or otherwise warrants the actions it has taken following the water damage. In fact, Mr. Jahanbein argues, § 10, silent on the particular actions at issue in his tort complaint, does not bring his fiduciary duty

claim within the purview of the Bylaws at all and so § 15.9's arbitration clause is inapplicable.

The trial court rejected Mr. Jahanbein's claim that his tort-based and statutory[4] breach of fiduciary duty claim against the Condo Association was not covered by the Bylaws and instead found that the "matter falls squarely within the subject matter of Section 10 of . . . [the] bylaws, and is therefore subject to the alternative dispute resolution procedures provided for in Section 15.9 of the same." As the Condo Association correctly argues, because § 10 spells out the "duties" of the Condo Association's board members and executives in connection with the collection and distribution of insurance funds, an interpretation of that Section of the Bylaws is necessary to determine whether the Condo Association breached its fiduciary duties under the relevant statute.

We agree with the trial court's ruling that the meaning of "duties" in the statutory provision depends upon the interpretation of § 10 of the Bylaws. The fiduciary duties claim against the Condo Association is therefore arbitrable pursuant to § 15.9's requirement that "disagreement[s] over the meaning, terms,

---

[4] Mr. Jahanbein claims the fiduciary duty breached by the Condo Association is based in the D.C. Condominium Act, specifically D.C. Code § 42-1903.08 (d), which states, "In the performance of duties, an officer or member of the executive board shall exercise the care required of a fiduciary of the unit owners."

conditions, and applicability" of a Bylaw provision shall be submitted to alternative dispute resolution.

In reaching this conclusion, we look to the Bylaws as a whole to determine whether Mr. Jahanbein's claim against the Condo Association is ultimately a "disagreement over the meaning, terms, conditions and applicability of" a Bylaw provision, and therefore within the meaning of § 15.9. *See Johnson v. Fairfax Vill. Condo. Unit Owners Ass'n*, 548 A.2d 87, 91 (D.C. 1988). Section 14.2 of the Bylaws, labeled "Legal Proceedings," states:

> Failure to comply with any of the terms of the Condominium Instruments . . . shall be grounds for relief which may include without limiting the same, an action to recover any sums due for money damages, . . . [or] any other relief provided for in these Bylaws, or any combination thereof, and/or any other relief afforded by a court of competent jurisdiction, *all of which relief may be sought* by the Association, the Board of Directors, the Manager or the Managing Agent, or *if appropriate, by an aggrieved Unit Owner.*

(Emphasis added). Section 14.2 plainly contemplates judicial involvement in some disputes, including actions brought by "an aggrieved Unit Owner[,]" but only "if appropriate."[5] Mr. Jahanbein and the Condo Association have agreed, however, through § 15.9, to read every clause within the Bylaws to contain a "provision to

---

[5] The Bylaws do not specify what makes a situation "appropriate" such that a unit owner like Mr. Jahanbein could bring a judicial action.

submit a disagreement . . . over the meaning . . . of the provision" to alternative dispute resolution. Through alternative dispute resolution, and not through a traditional court proceeding, the parties must determine whether the present conflict creates an "appropriate" case for a unit owner to bring a tort claim in a trial court.

Reading the Bylaws as a whole, we conclude that the trial court did not err in determining that Mr. Jahanbein's claims against the Condo Association raised legitimate questions about the "meaning" or "applicability" of at least § 10 of the Bylaws, making the claim arbitrable pursuant to § 15.9.

### B. Mr. Jahanbein and Mr. Sahri

Whether the Bylaws create an enforceable agreement between unit owners is less clear.[6] For Mr. Sahri to succeed in compelling arbitration under the Bylaws, he must first show that he and Mr. Jahanbein are parties to the contract such that they may enforce the Bylaws against one another.

---

[6] Other jurisdictions, such as Texas, have squarely held that condominium instruments, such as the declaration and bylaws, do not automatically create a binding contract between unit owners. *See Schindler v. Baumann*, 272 S.W.3d 793, 795 (Tex. App. 2008) (affirming a grant of summary judgment on a contract claim after noting that "nothing in the [condominium declarations] . . . purports to create a contract between [upstairs and downstairs unit owners in the same condominium]").

The Bylaws delineate the rights and obligations of unit owners, and the D.C. Code requires that "[e]ach unit owner shall comply strictly with the bylaws," D.C. Code § 42-2013 (2012 Repl.), but condominium bylaws do not automatically constitute an enforceable agreement between unit owners. The D.C. Code provides that "[f]ailure to comply with any of the [Bylaws] shall be ground for an action to recover sums due, for damages or injunctive relief, or both," but this potential judicial action, while "maintainable by the manager, the administrator, board of directors or of administration," can be brought "by an aggrieved unit owner" only "*as specified in the bylaws or in proper case*." D.C. Code § 42-2013 (emphasis added). Unit owners therefore do not have the automatic right to enforce the terms of Bylaws against one another, and are not parties to the "contract" unless the Bylaws provide for this type of relationship and enforcement.

Pointing to the language in § 15.9 requiring alternative dispute resolution for "disagreements *between either* the Unit Owners, the Unit Owners Association, its Board of Directors or its officers," Mr. Sahri argues that the Bylaws make clear that Mr. Jahanbein and Mr. Sahri have agreed to submit disputes to arbitration. (Emphasis added.) The "between either" language is less than clear, however—grammatically, the provision is ambiguous as to whether it includes, in addition to disagreements between individual unit owners and members of the latter categories, disagreements between two individual unit owners—and we therefore

disagree with the trial court's conclusion that "[t]he bylaws specifically provide that the dispute resolution procedures do apply to disputes between unit owners."

We find no less ambiguity in other provisions of the Bylaws. Although § 7.7.2 provides that "[e]ach Unit Owner shall be responsible for all damage to any and all other Units . . . resulting from his failure to make any of the repairs required to be made by him by this Section," we must first determine that Mr. Sahri and Mr. Jahanbein have an enforceable agreement to arbitrate before examining whether the dispute at issue falls within the scope of arbitrable controversies. If unit owners were third-party beneficiaries to the contracts that exist between other unit owners and the Condo Association, it could be possible for Mr. Sahri to enforce provisions of the Bylaws against Mr. Jahanbein. In order to conclude that Mr. Sahri is indeed a third-party beneficiary of the Bylaws, however, we would need to determine that the Bylaws—a set of contractual agreements between Mr. Jahanbein and the Association—were intended for Mr. Sahri's direct benefit. *See Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1064 (D.C. 2008) (citing *German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230 (1912)) ("'Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement, to which he is not a party, he must, at least, show that it was intended for his direct benefit.'") Read "as a whole to determine whether the third party's benefit under the contract is intended or incidental,"

*Western Union Tel. Co. v. Massman Const. Co.*, 402 A.2d 1275, 1277 (D.C. 1979), the Bylaws appear intended primarily and directly to benefit the Condo Association and not a third-party unit owner, despite the incidental benefits a third-party unit owner might find in its provisions. Accordingly, Mr. Sahri cannot enforce those provisions against Mr. Jahanbein as a third-party beneficiary, and must show that he is a direct party to the Bylaws in order to compel arbitration in this dispute.

Nothing in the Bylaws assures us that the unit owners are direct parties to each other's agreements with the Condo Association. Although we do employ a presumption in favor of arbitration in light of ambiguities, *Hercules*, 613 A.2d at 922, that presumption "attaches only *after* the trial court has determined that a valid agreement to arbitrate exists." *Masurovsky*, 687 A.2d at 205 (emphasis added). "Put another way, 'the scales tip in favor of arbitration when we construe an arbitration clause, but only after we find, as an initial matter, that an enforceable arbitration clause exists.'" *Id.* (quoting *Adamovic v. METME Corp.*, 961 F.2d 652, 654 (7th Cir. 1992) (internal citations omitted)). No such clause exists in the Ndidi Bylaws as it relates to disputes between unit owners, and we discern no basis for concluding that the Condo Association has any interest in how two owners resolve a dispute of this kind.

Mr. Sahri argues that we should compel arbitration nonetheless, as § 15.9 makes clear that "disagreement[s] . . . over the . . . applicability of the [Bylaws'] provision[s]" should be submitted to alternative dispute resolution. "[I]t is up to the courts," however, "not arbitrators, to adjudicate the validity of an arbitration clause. Regardless of what authority [the agreement] purported to confer on the arbitrator, the validity of the arbitration clause itself [is] for the court to decide." *Keeton v. Wells Fargo Corp.*, 987 A.2d 1118, 1122 (D.C. 2010).

Because we fail to find sufficient certainty in the ambiguous provisions of the Bylaws to compel arbitration between the unit owners in this case, we need not reach the "scope of arbitrable issues" step of our analysis with respect to Mr. Jahanbein's claim against Mr. Sahri.

### III.    Conclusion

For the foregoing reasons, we uphold the trial court's determination that Mr. Jahanbein's claim against the Condo Association is arbitrable. Because the Bylaws constitute an enforceable contract between Mr. Jahanbein and the Condo Association and because Mr. Jahanbein's fiduciary duty claim falls within the scope of the Bylaws, Mr. Jahanbein's claim against the Condo Association was properly dismissed by the Superior Court and can be submitted to alternative dispute resolution. We disagree, however, with the trial court's determination that

the Bylaws constitute an enforceable agreement to arbitrate the dispute between Mr. Jahanbein and Mr. Sahri. We therefore affirm the judgment of the Superior Court with respect to the claim against the Condo Association but reverse and remand for further proceedings with respect to the claim against Mr. Sahri.

*So ordered.*